1

2

3

4

5                        UNITED STATES DISTRICT COURT

6                        EASTERN DISTRICT OF CALIFORNIA

7

8   PASKENTA BAND OF NOMLAKI          No. 2:15-cv-00538-GEB-CMK
    INDIANS; and PASKENTA
9   ENTERPRISES CORPORATION,

10              Plaintiffs,           **ORDER GRANTING IN PART AND**
                                      **DENYING IN PART MOTIONS TO**
11       v.                           **DISMISS THE FIRST AMENDED**
                                      **COMPLAINT**
12  INES CROSBY; JOHN CROSBY;
    LESLIE LOHSE; LARRY LOHSE;
13  TED PATA; JUAN PATA; CHRIS
    PATA; SHERRY MYERS; FRANK
14  JAMES; UMPQUA BANK; UMPQUA
    HOLDINGS CORPORATION;
15  CORNERSTONE COMMUNITY BANK;
    CORNERSTONE COMMUNITY
16  BANCORP; JEFFERY FINCK; GARTH
    MOORE; GARTH MOORE INSURANCE
17  AND FINANCIAL SERVICES, INC.;
    ASSOCIATED PENSION
18  CONSULTANTS, INC.; HANESS &
    ASSOCIATES, LLC; ROBERT M.
19  HANESS; THE PATRIOT GOLD &
    SILVER EXCHANGE, INC. and
20  NORMAN R. RYAN,

21              Defendants,

22  CRP 111 WEST 141ST LLC;
    CASTELLAN MANAGING MEMBER
23  LLC; CRP WEST 168TH STREET
    LLC; and CRP SHERMAN AVENUE
24  LLC,

25              Nominal
                Defendants[1].
26

27  _____

    [1]      Former Defendant Quicken Loans, Inc. ("Quicken") filed a dismissal
28  motion. However, Plaintiffs voluntarily dismissed their claims against
    Quicken, which renders the motion moot and it is therefore denied.

                                    1

1    The following Defendants seek dismissal of claims in

2 Plaintiffs' First Amended Complaint ("FAC"): Ines Crosby, John

3 Crosby, Leslie Lohse, Larry Lohse (collectively, the "Employee

4 Defendants"), Juan Pata, Chris Pata, Sherry Myers, Frank James,

5 The Patriot Gold & Silver Exchange, Norman R. Ryan (collectively,

6 with the Employee Defendants, "Pata Defendants"), Umpqua Bank,

7 Umpqua Holdings Corporation (collectively, "Umpqua Defendants"),

8 Cornerstone Community Bank, Cornerstone Community Bancorp,

9 Jeffery Finck (collectively, "Cornerstone Defendants"), Garth

10 Moore, Garth Moore Insurance and Financial Services, Inc.

11 (collectively, "Moore Defendants"), Associated Pension

12 Consultants, Inc. ("APC"), Robert M. Haness, and Haness &

13 Associates, LLC (collectively, "Haness Defendants").

14    The Pata Defendants and Moore Defendants seek dismissal

15 under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack

16 of subject matter jurisdiction. Umpqua Defendants, Cornerstone

17 Defendants, Moore Defendants, APC, and Haness Defendants seek

18 dismissal under Rule 12(b)(6) for failure to state a claim.

19       **I. FACTUAL ALLEGATIONS**

20    The following factual allegations in the FAC relate to

21 the motions. Plaintiff Paskenta Band of Nomlaki Indians ("the

22 Tribe") employed the Employee Defendants in executive roles for

23 more than a decade. Plaintiffs allege the Employee Defendants

24 used their positions to embezzle millions of dollars from the

25 Tribe and its principal business entity, the Paskenta Enterprises

26 Corporation ("PEC"). Plaintiffs allege the Employee Defendants

27 stole this money from Plaintiffs' bank accounts at Umpqua Bank

28 and Cornerstone Bank by withdrawing large sums for their personal

use, and that the Employee Defendants caused the Tribe to invest in two unauthorized retirement plans for their personal benefit: a defined benefit plan ("Tribal Pension Plan") and a 401(k) ("Tribal 401(k)") (collectively "Tribal Retirement Plans"). Plaintiffs allege the Employee Defendants kept their activities hidden from Plaintiffs through <u>inter alia</u>, harassment, intimidation, and cyber-attacks on the Tribe's computers.

Plaintiffs further allege the remaining Defendants knowingly assisted the Employee Defendants in aspects of their scheme. Plaintiffs allege the Umpqua Defendants and the Cornerstone Defendants controlled banks where Plaintiffs maintained accounts and, despite knowing the Employee Defendants were withdrawing money from these accounts for their personal benefit, permitted the Employee Defendants to make withdrawals and failed to notify Plaintiffs of the Employee Defendants' actions. Plaintiffs also allege the Moore Defendants, as Plaintiffs' financial advisors, and APC, as the third-party administrator for the Tribal Retirement Plans, assisted the Employee Defendants in setting up and administering the unauthorized Tribal Retirement Plans, and that the Haness Defendants as actuaries for the Tribal Pension Plan, assisted the Employee Defendants in setting up and administering that Plan.

## II. DISCUSSION

### A.   Subject Matter Jurisdiction

Pata Defendants and Moore Defendants each argue this lawsuit should be dismissed since the allegations in Plaintiffs' FAC demonstrate the federal court lacks subject matter jurisdiction over the lawsuit because Plaintiffs' claims "are

1    inextricably intertwined with internal [issues of] Paskenta

2    Tribal governance and the interpretation and application of

3    Paskenta Tribal law." (Tribal Defs. Not. Mot. & Mot. Dismiss

4    ("Pata Mot.") 3:9-10, ECF No. 52; <u>see also</u> Defs. Garth Moore and

5    Garth Moore Ins. & Fin. Servs., Inc.'s Not. Mot. & Mot. Dismiss

6    ("Moore Mot.") 4:24-26, ECF No. 52.)

7            Plaintiffs respond:

8            This Court has . . . subject matter
             jurisdiction . . . based on several statutory
9            provisions: First, . . . the Court has
             federal question jurisdiction under 28 U.S.C.
10           § 1331, as [Plaintiffs] ha[ve] stated claims
             under RICO, 18 U.S.C. §§ 1961 et seq. and
11           under the [Computer Fraud and Abuse Act], 18
             U.S.C. § 1030 . . . . Second [the court has
12           subject matter jurisdiction since] the
             Tribe's governing body is federally
13           recognized, [and]. . . 28 U.S.C. § 1362
             [states]:
14
             "The district courts shall have original
15           jurisdiction of all civil actions, brought by
             any Indian tribe . . . with a governing body
16           duly recognized by the Secretary of the
             Interior, wherein the matter in controversy
17           arises under the Constitution, laws, or
             treaties of the United States." . . .
18
             Third, based on the . . . RICO claim,
19           specifically, the Court has subject matter
             jurisdiction [under] . . . 18 U.S.C. §
20           1964(a),(c). And fourth, the Court has
             ancillary jurisdiction over the . . . pendent
21           California state law claims under 28 U.S.C. §
             1367.
22

23   (Pls.' Opp'n Mot. Dismiss ("Opp'n") 13:3-17, ECF No. 73.)

24           The Pata Defendants and the Moore Defendants make what

25   is considered a facial challenge to the federal court's subject

26   matter jurisdiction. "In a facial [challenge], the challenger

27   asserts that the allegations contained in the complaint are

28   insufficient on their face to invoke federal jurisdiction." <u>Safe</u>

1    Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

2    When deciding a facial challenge, Plaintiffs are afforded the

3    same procedural protections as when faced with a motion to

4    dismiss for failure to state a claim under Rule 12(b)(6); namely,

5    the court "assume[s] [plaintiffs'] allegations to be true and

6    draw[s] all reasonable inferences in [their] favor." Wolfe v.

7    Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

8          Pata Defendants and Moore Defendants have not shown

9    that whatever they have referenced as "internal [issues of]

10    Paskenta Tribal governance and the interpretation and application

11    of Paskenta Tribal Law," deprives the federal court of subject

12    matter jurisdiction over Plaintiffs' claims. (Pata Mot. 3:9-10.)

13          Therefore each motion challenging the federal court's

14    subject matter jurisdiction is denied.

15    **B. Failure to State a Claim**

16          **1. Legal Standard**

17          "To survive a motion to dismiss, a complaint must

18    contain sufficient factual matter, accepted as true, to state a

19    claim to relief that is plausible on its face." Caviness v.

20    Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir.

21    2010) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "A claim

22    has facial plausibility when the plaintiff pleads factual content

23    that allows the court to draw the reasonable inference that the

24    defendant is liable for the misconduct alleged." Iqbal, 556 U.S.

25    at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556

26    (2007)). "Determining whether a complaint states a plausible

27    claim for relief . . . [is] a context-specific task that requires

28    the . . . court to draw on its judicial experience and common

1    sense." Id. at 679. "For purposes of a motion to dismiss, we

2    accept all well-pleaded allegations of material fact as true and

3    construe them in the light most favorable to the nonmoving

4    party." Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777,

5    783 (9th Cir. 2012).

6                  **2.  Actual Knowledge**

7        Umpqua Defendants, APC, and Haness Defendants each seek

8    dismissal of Plaintiffs' claims in which Plaintiffs allege they

9    aided and abetted the Employee Defendants' conversion of Tribal

10    assets and the Employee Defendants' breach of their fiduciary

11    duty owed to Plaintiffs, contending the FAC fails to plausibly

12    allege the referenced Defendants had actual knowledge of the

13    Employee Defendants' wrongdoing.[2] Umpqua Defendants and Haness

14    Defendants seek dismissal with prejudice.

15               "Liability may . . . be imposed on one who
               aids and abets the commission of an
16                intentional tort if the person (a) knows the
               other's conduct constitutes a breach of duty
17                and gives substantial assistance or
               encouragement to the other to so act or (b)
18                gives substantial assistance to the other in
               accomplishing a tortious result and the
19                person's own conduct, separately considered,
               constitutes a breach of duty to the third
20                person."

21    Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144

22    (2005) (alterations in original) (citing Saunders v. Superior

23    Court, 27 Cal. App. 4th 832, 846 (1994)). "[A]iding and abetting

24    _____

       [2] Moore Defendants also seek dismissal of what they refer to as
25    Plaintiffs' claim against them for aiding and abetting the Employee
     Defendants' RICO violations, arguing the claim is not legally cognizable.
26    However, Plaintiffs' only aiding and abetting claims against the Moore
     Defendants allege they aided and abetted the Employee Defendants in converting
     Tribal assets and aided and abetted the Employee Defendants in breaching the
27    fiduciary duty the Employee Defendants owed Plaintiffs under state law.
     Therefore, the motion is denied because it has not been shown to concern an
28    actual controversy.

1    liability under California law, as applied by the California
2    state courts, requires a finding of actual knowledge," which
3    "requires more than a vague suspicion of wrongdoing." In re First
4    Alliance Mortg. Co., 471 F.3d 977, 993, n.4 (9th Cir. 2006).
5    "[T]o satisfy the knowledge prong [Plaintiffs must plausibly
6    allege], the defendant . . . [had] 'actual knowledge of [an
7    Employee Defendant's conversion or breach of fiduciary duty owed
8    to Plaintiffs.]" Id. at 993 (citation omitted).

9                        **a.    Umpqua Defendants**

10           Plaintiffs allege in the FAC the Umpqua Defendants had
11   actual knowledge of the Employee Defendants' conversion of Tribal
12   assets and of their breach of the fiduciary duty the Employee
13   Defendants owed to Plaintiffs, since "[Employee Defendant Ines]
14   Crosby would frequently go to Umpqua's Orland, California branch
15   and present checks from the Tribe's checking account made payable
16   to 'Cash' . . . for large sums" and the tellers would give her
17   the money. (FAC ¶ 283.) Plaintiffs allege the Orland branch "is
18   small with approximately four tellers" working at a time and "as
19   members of the Orland community [the Umpqua tellers] were aware
20   of the extraordinarily extravagant and luxurious life style
21   enjoyed by . . . Ines Crosby." (FAC ¶ 590.) Plaintiffs allege
22   Ines Crosby's withdrawals from Umpqua Bank "were remarkably large
23   relative to other withdrawal[s] from the branch;" and were often
24   large enough to "require[] Umpqua . . . to file a Currency
25   Transaction Report ("CTR") with the Internal Revenue Service."
26   (FAC ¶¶ 591-92.) Plaintiffs also allege the Umpqua Defendants
27   permitted Ines Crosby to pay her credit card bills through the
28   Tribe's account despite receiving "specific training" that this

1    could be "a means to disguise . . . illegal transactions" and

2    that the Umpqua tellers continued to serve Ines Crosby "after it

3    was widely reported in the local press that [she] . . . had been

4    . . . suspected of misappropriating millions of dollars." (FAC ¶¶

5    599, 594.)

6           Plaintiffs' allegations are insufficient to plead

7    plausible claims that the Umpqua Defendants had actual knowledge

8    of the Employee Defendants' alleged conversion of Tribal assets

9    or of the Employee Defendants' alleged breach of their fiduciary

10   duty owed to Plaintiffs. Therefore, these claims are dismissed.

11   However, Umpqua Defendants have not shown amendment would be

12   futile.

13                          **b.    APC**

14          Plaintiffs allege the manner in which the Employee

15   Defendants instructed APC to administer the Tribal Retirement

16   Plans indicated to APC that the Employee Defendants intended to

17   use these plans as a short-term vehicle to steal from the Tribe,

18   and that the Employee Defendants' instructions, coupled with

19   APC's retirement plan administration experience, are sufficient

20   to support drawing a reasonable inference that APC had actual

21   knowledge of the Employee Defendants' alleged thievery

22   intentions.

23          Specifically, Plaintiffs allege APC "set up and

24   administered" the Tribal Retirement Plans "as though the Tribe

25   was . . .[a] wholly owned small business" with few eligible

26   participants rather than a Tribal nation; assisted the Employee

27   Defendants in making choices that were not compliant with ERISA;

28   developed Tribal Retirement Plans designed for short-term funding

1   that could be cashed-out in five years; and allowed Defendant

2   John Crosby to sign documents authorizing early-withdrawals from

3   his 401(k), even after his employment with the Tribe had been

4   terminated. (FAC ¶¶ 220-225.)

5            These allegations are insufficient to plead a plausible

6   claim that APC had actual knowledge of the Employee Defendants'

7   alleged theft of Plaintiffs' money, since they do not plausibly

8   allege that APC knew the irregularity in the Tribal Retirement

9   Plans was the result of the Employee Defendants' intent to

10  convert Plaintiffs' funds. Therefore, the claim is dismissed.

11                       **c. Haness Defendants**

12           Plaintiffs allege that because the Haness Defendants

13  are "retirement professionals," the manner in which the Employee

14  Defendants structured the Tribal Pension Plan indicated to the

15  Haness Defendants that the Employee Defendants' intended "to use

16  the Tribal Pension Plan as a short-term investment to divert

17  Tribal funds." (FAC ¶ 223.) Plaintiffs allege in the FAC that the

18  Tribal Pension plan was set up "with an actuarial formula in

19  which the target retirement benefit was . . . approximately 4

20  times higher than the industry standard," (FAC ¶ 223(a)), and the

21  "retirement benefit qualification criteria [qualifying an

22  employee with five years of service who had attained the age of

23  65] . . . caused the Tribe to make . . . , extraordinarily high

24  contributions for Ines Crosby." (FAC ¶ 223(b).) Plaintiffs also

25  allege the Haness Defendants were aware that terminating a

26  pension plan just a few years after its inception, as the

27  Employee Defendants ultimately did, is evidence that the plan

28  from the outset was not a bona fide retirement program. (FAC ¶

9

1  223(c).)

2         However, the FAC does not contain allegations that

3  support drawing a reasonable inference that the Haness Defendants

4  had actual knowledge the alleged reason for the Tribal Pension

5  Plan's irregular structure was an intent to convert Tribal

6  assets. Therefore this claim is dismissed. However, Haness

7  Defendants have not shown amendment would be futile.

8         **3.   Duty**

9         Umpqua Defendants, Cornerstone Defendants, and Haness

10  Defendants each seek dismissal of Plaintiffs' common law

11  negligence claim arguing the FAC fails to plausibly allege they

12  owed Plaintiffs' a duty of care, which is an element of a

13  negligence claim. Umpqua Defendants also seek dismissal of

14  Plaintiffs' breach of contract claim for the same reason. Umpqua

15  Defendants and Haness Defendants seek dismissal with prejudice.

16         **a.   The Banking Defendants**

17         Banks "ha[ve] a duty to act with reasonable care in

18  [their] transactions with depositors;" this duty "is an implied

19  term in the contract between the bank and its depositor." Chazen

20  v. Centennial Bank, 61 Cal. App. 4th 532, 543 (1998). However,

21  "[t]his contractual relationship does not involve any implied

22  duty to supervise account activity, or to inquire into the

23  purpose for which the funds are being used." Id. at 537.

24  California law "require[s] banking transactions to be processed

25  quickly and automatically," and "[u]nder this system favoring

26  expedited handling of funds transfers, a bank cannot be expected

27  to track transactions in fiduciary accounts or to intervene in

28  suspicious activities." Id. at 539. A "bank is not liable for the

misappropriation [of a customer's] funds by [its authorized signatories], . . . <u>unless the bank has knowledge, actual or constructive, of such misappropriation</u>." <u>Blackmon v. Hale</u>, 1 Cal.3d 548, 556 (1970)(emphasis added).

### i.   Umpqua Defendants

Plaintiffs allege Umpqua's tellers "receive training concerning . . . federal and internal reporting requirements" regarding the large cash transactions that the Employee Defendants made at Umpqua Bank, and that these reporting requirements put the Umpqua Defendants on inquiry notice of the Employee Defendants' unlawful conduct and created a duty on the part of the Umpqua Defendants to "inquir[e into] or investigat[e]" these transactions. (FAC ¶¶ 591-93.)

Plaintiffs allege the Employee Defendants were authorized by the Tribe to access Plaintiffs accounts, but do not plausibly allege the Umpqua Defendants had actual or constructive knowledge of the Employee Defendants' alleged misappropriation since it has not been plausibly pled that transactions triggering "federal and internal reporting requirements" indicate misappropriation. Therefore, Plaintiffs negligence and breach of contract claims are dismissed. However, Umpqua Defendants have not shown amendment would be futile.

### ii.   Cornerstone Defendants

Plaintiffs argue they plausibly allege a negligence claim against the Cornerstone Defendants since they allege Jeffrey Finck, Cornerstone's CEO, "alerted a Tribal employee that the Tribe should look at the suspicious activity that the [Employee Defendants] had conducted with the Tribe's money

11

1    deposited in Cornerstone Bank." (Opp'n 52:27-53:7; FAC ¶ 644.)

2        However, the allegation that Finck alerted a Tribal

3    employee to "suspicious activity" does not plausibly allege he or

4    any of other Cornerstone Defendants had actual or constructive

5    knowledge of the Employee Defendants' conversion and breach of

6    the fiduciary duty they owed to Plaintiffs. Therefore, the

7    Cornerstone Defendants' motion is granted.

8                    **b.   Haness Defendants**

9        Plaintiffs argue the Haness Defendants owed them a duty

10   of care since Plaintiffs were third party beneficiaries of the

11   Tribal Pension Plan, they sponsored the plan, and the Haness

12   Defendants set up of the Tribal Pension Plan. (Opp'n 71:14-16.)

13       The Haness Defendants reply that "[t]o qualify as

14   [being owed a duty of care] as a third party beneficiary of a

15   contract, the third party must show that the contract was made

16   expressly for his [or her] benefit" and the FAC does not allege

17   the Tribal Pension Plan was made for Plaintiffs' benefit. (Reply

18   of Defs. Robert M. Haness & Haness & Assoc., LLC ISO Mot. Dismiss

19   FAC ("Haness Reply") 5:21-22; 6:3-6, ECF No. 84.)

20           California law generally states that the duty
21           of ordinary care owed by a supplier of
             information [like an actuary] . . . does not
             run to non-clients. However, California law
22           recognizes an exception to the general rule,
             that such a supplier of information does owe
23           a duty to intended third party beneficiaries.

24   Paulsen v. CNF Inc., 559 F.3d 1061, 1080-81 (9th Cir. 2009).

25       Plaintiffs do not plausibly allege they are third-party

26   beneficiaries of the Tribal Retirement Plan. Therefore, this

27   claim is dismissed. However, the Haness Defendants have not shown

28   amendment would be futile.

                                    12

### 4.  Restitution

Umpqua Defendants, APC, and Haness Defendants seek dismissal of Plaintiffs' restitution claims arguing no such claim exists under California law. Plaintiffs do not oppose Umpqua Defendants' motion, but oppose the motion concerning their claims against APC and Haness, arguing California law permits a restitution claim.

Restitution "is synonymous with" unjust enrichment. Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1370 (2010). "California courts are split on the question whether unjust enrichment [and restitution] [are] viable cause[s] of action under California law." In re TFT-LCD (Flat Panel) Antitrust Litig., No. C-10-5625-SI, 2011 WL 4345435, at *3(N.D. Cal. Sept. 15, 2011) (citing cases). However, the Ninth Circuit has stated:

> [I]n California, there is not a standalone cause of action for "unjust enrichment," which is synonymous with "restitution." However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." The return of that benefit is the remedy "typically sought in a quasi-contract cause of action." When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution."

Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015)(citations omitted). "While the California courts have not conclusively decided this question, . . . the court is bound by the Ninth Circuit's interpretations of state law." Brown v. Gen. Steel Domestic Sales, LLC, No. CV08-00779-MMM-(SHX), 2008 WL 2128057, at *5 (C.D. Cal. May 19, 2008). Therefore, Plaintiffs

1 restitution claim could be construed as a quasi-contract claim,

2 and since the movants have not shown the FAC fails to allege such

3 a quasi-contract claim, each dismissal motion is denied.

4      **5.   Fiduciary Duty**

5      Cornerstone Defendants, APC and Haness Defendants each

6 seek dismissal of Plaintiffs' breach of fiduciary duty claim

7 arguing they owed Plaintiff no such duty. APC and the Haness

8 Defendants seek dismissal with prejudice.

9
> A fiduciary relationship is any relation

10
> existing between parties to a transaction
> wherein one of the parties is duty bound to

11
> act with the utmost good faith for the
> benefit of the other party. Such a relation

12
> ordinarily arises only where a confidence is
> reposed by one person in the integrity of

13
> another.

14 Wolf v. Superior Court, 107 Cal. App. 4th 25, 29 (2003)

15 (quotation marks omitted). "The essence of a fiduciary . . .

16 relationship is that the parties do not deal on equal terms,

17 because the person in whom trust and confidence is reposed . . .

18 is in a position to exert unique influence over the dependent

19 party." Richelle L. v. Roman Catholic Archbishop, 106 Cal. App.

20 4th 257, 271 (2003). "[B]efore a person can be charged with a

21 fiduciary obligation [to another], he [or she] must either

22 knowingly undertake to act on behalf and for the benefit of

23 another, or must enter into a relationship which imposes that

24 undertaking as a matter of law." Comm. On Children's Television,

25 Inc. v. General Foods Corp., 35 Cal. 3d 197, 221 (1983).

26      **a.   Cornerstone Defendants**

27      Plaintiffs argue Cornerstone Defendants owed them a

28 fiduciary duty since "[t]he Tribe is a shareholder of Cornerstone

1  Bank and is accordingly owed" a fiduciary duty even if such a

2  duty is not present in an exclusively "strictly . . . bank-

3  depositor relationship." (Opp'n 52:17-19.)

4      Cornerstone Defendants reply that Plaintiffs

5  "conflate[] the duties owed to the Tribe as a shareholder with

6  those owed to the Plaintiffs as depositors," since Plaintiffs'

7  breach of fiduciary duty claim stems from Plaintiffs' bank

8  accounts with Cornerstone Bank. (Cornerstone Defendants' Reply

9  ISO Mot. Dismiss ("Cornerstone Reply") 12:2-3; 12:20-13:1, ECF

10 No. 85.) The Cornerstone Defendants further argue: "Nowhere does

11 the FAC allege that PEC was a shareholder" and therefore "the

12 Cornerstone Defendants clearly owed no fiduciary duty to PEC

13 under any theory." (Cornerstone Reply 12 n.3.)

14      Plaintiffs allege in the FAC that the Tribe and PEC

15 were account holders at Cornerstone Bank. "[U]nder ordinary

16 circumstances the relationship between a bank and its depositor

17 is that of a debtor-creditor, and is not a fiduciary one," and

18 therefore this relationship does not establish the Cornerstone

19 Defendants owed Plaintiffs a fiduciary duty. Lawrence v. Bank of

20 Am., 163 Cal. App. 3d 431, 437 (1985 However, the Tribe also

21 alleges it was a minority shareholder in Cornerstone Bank and in

22 this capacity, the Cornerstone Defendants owed it a fiduciary

23 duty of loyalty, which the Cornerstone Defendants breached by

24 remaining silent while Employee Defendant John Crosby used the

25 Tribe's accounts at Cornerstone bank for his personal benefit.

26 Plaintiffs have not plausibly alleged that any fiduciary duty of

27 loyalty that the Cornerstone Defendants owed the Tribe as a

28 minority shareholder extended to matters involving the Tribe's

15

1   bank account at Cornerstone bank. Therefore, the claim is
2   dismissed.

3                    **b.   Tribal Retirement Plan Defendants**

4                         **i.   APC**

5           APC argues it owed Plaintiffs no fiduciary duty since
6   the FAC "simply state[s] that APC administered the Tribe's
7   pension plans" and this assertion which "does not create a
8   fiduciary relationship" between APC and Plaintiffs. (Not. & Mot.
9   Def. Associated Pension Consultants, Inc. Dismiss FAC ("APC
10  Mot.") 6:17-18, ECF No. 53.)

11          Plaintiffs respond they sufficiently allege a fiduciary
12  relationship since "[b]y setting up and administering the Tribe's
13  pension plans and 401(k), APC performed discretionary acts on
14  behalf of the Tribe," and the Tribe "'relied on APC to ensure
15  [the retirement plans] were ERISA compliant.'" (Opp'n 58:17-21.)

16          Plaintiffs allege in the FAC that the Employee
17  Defendants "received advice and direction from . . . APC in
18  setting up and administering the Tribal Retirement Plans," and
19  APC "substantially assisted [the Employee Defendants] in making
20  investment choices with the funds invested in the plans." (FAC ¶¶
21  218, 225.) Plaintiffs also allege APC "was responsible for
22  ensuring that the plans remained ERISA compliant" and "repeatedly
23  assisted the [Employee Defendants] in establishing, modifying and
24  funding the Tribal Retirement Plans," and that Employee
25  Defendants and Sherry Myers were the only beneficiaries of the
26  Tribal Retirement Plans. (FAC ¶¶ 222, 225.)

27          These allegations are insufficient to plausibly allege
28  APC owed a fiduciary duty to Plaintiffs. Therefore, the claims

1   are dismissed.

2                    **ii.   Haness Defendants**

3          The Haness Defendants argue as actuaries for the Tribal

4   Pension Plan, they had no fiduciary relationship with Plaintiffs,

5   since Plaintiffs are not beneficiaries of the Plan.

6          Plaintiffs respond the Haness Defendants owed them a

7   fiduciary duty because Plaintiffs allege the Haness Defendants

8   knew the Tribe sponsored the Tribal Pension Plan and since

9   Plaintiffs were the plan's sponsor, they were "the intended

10  beneficiar[ies]" of the plan, and were owed a fiduciary duty.

11  (Opp'n 68:6-9; 68:11-12.)

12         Plaintiffs allege the Employee Defendants and Sherry

13  Myers were the only beneficiaries of the Tribal Pension Plan.

14  Plaintiffs' allegations do not plausibly allege a fiduciary

15  relationship between Haness Defendants and Plaintiffs. Therefore,

16  Plaintiffs' claims are dismissed. However, Haness Defendants have

17  not demonstrated amendment would be futile.

18                 **6.   Statutory Negligence**

19         Umpqua Defendants and Cornerstone Defendants each seek

20  dismissal of Plaintiffs' statutory negligence claim. Umpqua seeks

21  dismissal with prejudice. Plaintiffs do not oppose the motions,

22  but argue Umpqua Defendants have not shown leave to amend would

23  be futile. Therefore, the claims are dismissed with leave to

24  amend.

25                  **7.   Individual Claims**

26                    **a.   Cornerstone**

27         Cornerstone Defendants seek dismissal of each claim

28  alleged against them arguing "the Tribe released said defendants

1   from all such claims [in an agreement] executed in May of 2014."

2   (Not. Mot. & Mot. of Cornerstone Defs.' (Cornerstone Mot.") 1:20,

3   ECF No. 50.) Cornerstone Defendants attach the agreement, titled

4   "Amended and Restated Defense and Indemnity Agreement," on which

5   an execution date of May 19, 2014 is set forth, as Exhibit A to

6   their motion ("May 19 Agreement"). Cornerstone Defendants argue

7   the May 19 Agreement should be incorporated by reference into the

8   FAC since Plaintiffs "repeatedly refer to [it] in the FAC."

9   (Cornerstone Mot. 5:4-6.)

10       Plaintiffs disagree that the FAC references the May 19

11  Agreement, arguing the agreement referenced in the FAC is a prior

12  agreement the parties entered on April 22, and state that the

13  later referenced agreement is attached as Exhibit 1 to the

14  Declaration of Ambrosia Rico, and is titled "Defense and

15  Indemnity Agreement" ("the April 22 Agreement").

16       Plaintiffs allege in the FAC that after the Employee

17  Defendants employment with the Tribe was terminated, the

18  Cornerstone Defendants "refus[ed] to provide the Tribe access to

19  the Tribe's money on deposit at Cornerstone Bank, unless and

20  until the Tribe released Cornerstone Bank . . . [from] claims

21  arising out of [its] wrongful conduct," and therefore the release

22  agreement is "null and void" since it was "procured . . .

23  [through] intentional and/or negligent misrepresentations and/or

24  fraudulent omissions," and economic duress. (FAC ¶¶ 645-647.)

25       Neither party disputes the authenticity of the April 22

26  Agreement or the May 19 Agreement and although the FAC references

27  a release agreement, it is unclear what agreement is referenced.

28  Since the Cornerstone Defendants have not shown that the May 19

18

1  Agreement is incorporated by reference into the FAC, its motion

2  is denied.

3  **b.   APC**

4  APC seeks dismissal of the claims alleged against it

5  arguing the claims are barred by the statute of limitations,

6  Plaintiffs fail to plausibly allege APC caused Plaintiffs'

7  injuries, and the FAC lacks any allegations concerning APC's

8  conduct toward PEC. APC also seeks dismissal of, or in the

9  alternative, moves to strike, Plaintiffs' punitive damages claim.

10  **i.   Statute of Limitations**

11  APC argues each of Plaintiffs' claims is governed by a

12  four-year statute of limitations period and Plaintiffs "complaint

13  was filed more than four years after Plaintiffs were allegedly

14  wronged and suffered injury." (APC Mot. 13:8-10.)  The initial

15  complaint was filed March 10, 2015.

16  Plaintiffs respond that "[t]he FAC demonstrates that

17  they did not discover—nor could they have discovered through

18  reasonable investigation—the existence of their injury or

19  Defendants' wrongful conduct until April 2014, when the [Employee

20  Defendants] were removed from control of the Tribe." (Opp'n

21  55:23-25.)

22  "In ordinary tort and contract actions, the statute of

23  limitations . . . begins to run upon the occurrence of the last

24  element essential to the cause of action. The plaintiff's

25  ignorance of the cause of action, or the identity of the

26  wrongdoer, does not toll the statute." Neel v. Magana, Olney,

27  Levy, Cathcart & Gelfand, 6 Cal.3d 176, 187 (1971).

28  To align the actual application of the

19

1
2
3
4
5
6

> limitations defense more closely with the policy goals animating it, the [California] courts and the [California] Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods. . . . . The "most important" of these doctrines, the discovery rule, where applicable, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."

7
8
9
10
11
12
13

Aryeh v. Canon Bus. Solutions, Inc., 55 Cal.4th 1185, 1192 (2013) (quoting Norgart v. Upjohn Co., 21 Cal.4th 383 (1999)). "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (2005) (quoting Norgart v. Upjohn Co., 21 Cal.4th 383 (1999)).

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiffs allege they could not have discovered the Employee Defendants alleged wrongdoing until April 2014 since the Employee Defendants "took extraordinary action to hide their scheme from discovery" by "refusing to provide any information to other Tribal members, including members of the Tribal Council, concerning the Tribe's financial activities," by "purposefully prevent[ing] any type of standard auditing or reporting," by "manipulat[ing] the electoral process by which the Tribal Council was chosen," by "purchas[ing] the silence of persons who were in a position to disclose their wrongful conduct," and by "ma[king] repeated false claims that they were entitled to take all of the benefit they stole from the Tribe." (FAC ¶¶ 422-426.) APC has not shown that these allegations are insufficient to have postponed the date on which Plaintiffs' causes of action accrued under the

28

1    applicable   statute   of   limitations.   Therefore   its   motion   is

2    denied.

3                            **ii.   Injury**

4          APC argues each claim against it should be dismissed

5    since "[t]he FAC establishes that no act or omission by APC could

6    be   the   cause"   of   Plaintiffs'   injuries   since   the   Employee

7    Defendants   "engaged   in   numerous   [criminal]   acts   which   create   a

8    superseding cause." (APC Mot. 4:15-16; 5:15-16.)

9          Plaintiffs   respond   that   a   superseding   cause   only

10   prevents   liability   where   it   "breach[es]   the   chain   of   causation"

11   making the injury unforeseeable, and Plaintiffs' economic injury

12   was   the   foreseeable   result   of   APC   work   setting   up   and

13   administering the Tribal Retirement Plans. (Opp'n 63:4-5; 63:7-

14   9.)

15              The general test of whether an independent
              intervening act, which operates to produce an
16              injury, breaks the chain of causation is the
              foreseeability of the act. An act is not
17              forseeable and thus is a superseding cause of
              the injury if the independent intervening act
18              is highly unusual or extraordinary, not
              reasonably likely to happen.

19   Schrimsher v. Bryson, 58 Cal. App. 3d 660, 664 (1976).

20              Criminal conduct which causes injury will
              ordinarily be deemed the proximate cause of
21              an injury, superseding any prior negligence
              which might otherwise be deemed a
22              contributing cause. However "if the
              likelihood that a third person may act in a
23              particular manner is the hazard or one of the
              hazards which makes the actor negligent, such
24              an act whether innocent, negligent,
              intentionally tortious or criminal does not
25              prevent the actor from being liability for
              the harm caused thereby."
26

27   Koepke v. Loo, 18 Cal. App. 4th 1444, 1449 (1993) (quoting Vesely

28   v. Sager, 5 Ca.3d 153, 164 (1971) abrogated on other grounds by

                                    21

1    Cal. Civ. Code § 1714).

2          Plaintiffs allege the Employee Defendants "received

3    advice and direction from" APC and "routinely consulted" with APC

4    regarding the Tribal Retirement Plans. (FAC ¶ 218.) Plaintiffs

5    allege "[s]everal factors are indicative of the fraudulent nature

6    of the Tribal Retirement Plans" and by "setting up and

7    administering the Tribal Retirement Plans in ways that would

8    never have been done for a financially accountable or healthy

9    business," APC caused harm to the Tribe. (FAC ¶¶ 219-220.)

10   Plaintiffs allege ERISA and Treasury Department regulations

11   prescribe retirement plans "must be created and administered with

12   the intention of creating a permanent mechanism for retirement

13   savings that benefits an employer's current and future employees

14   generally," yet the Tribal Retirement Plans were set up to only

15   benefit the Employee Defendants and Sherry Myers, and "excluded

16   participation of any [other] employees of the Tribe." (FAC ¶¶

17   220-221.) Plaintiffs further allege APC was aware that "[t]he

18   establishment and . . . modification" of the Tribal Retirement

19   Plan "required authorization from the Tribal Council," yet APC

20   set up and administered the Tribal Retirement Plans without

21   receiving authorization. (FAC ¶ 222.) Plaintiffs further allege

22   the IRS requires a retirement plan to be set up "with the intent

23   to be a permanent, not temporary program," yet APC:

24             structured and administered the Tribal
               Pension Plan as a short-term . . . mechanism
25             to divert a huge amount of Tribal money . . .
               quickly [by using] . . . an actuarial
26             formula in which the target retirement
               benefit was . . . four times higher than the
27             industry standard, [and allowing an employee
               to cash out after five years and as a
28             result,] . . . . the Tribal Pension Plan was

                                  22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> shut down after only give years of existence
> because it was too generous.

(FAC ¶ 223.) Plaintiffs allege APC allowed Employee Defendant John Crosby to sign documents authorizing early-withdrawals from his 401(k), even after his employment with the Tribe had terminated. (FAC ¶ 224.)

Considering Plaintiffs' allegations in the FAC, APC has not shown the Employee Defendants' alleged criminal conduct was a superseding cause of Plaintiffs' harm. Therefore, APC's motion is denied.

### iii.   PEC

APC argues each claim PEC alleges against it fails "because the FAC is devoid of any allegations against APC involving PEC." (APC Mot. 3:27-28.)

PEC does not respond to this argument. APC also filed a reply brief in which it states PEC's silence evinces that this portion of APC's dismissal motion should be granted without leave to amend.

None of the allegations in the FAC state a claim against APC on behalf of PEC. Therefore, PEC's claims against APC are dismissed. Further, since PEC has not responded to APC's dismissal argument, this failure to respond is construed as an admission that granting leave to amend would be futile. Therefore, this portion of APC's motion is granted without leave to amend.

### iv.   Punitive Damages

APC argues the Tribe's punitive damages prayer against it should be dismissed or in the alternative stricken since

23

1   "Plaintiffs' defective charging allegations are . . . unsupported

2   by facts that establish the requisite elements of malice,

3   oppression or fraud." (APC Mot. 17:25-26.)

4          The Tribe responds it sufficiently pled that APC

5   committed fraud in the FAC, since it alleges that "[r]ather than

6   making the . . . disclosures [to the Tribe that APC was required

7   to make as a result of its fiduciary relationship with the

8   Tribe], APC fraudulently concealed several facts material to

9   Plaintiffs' rights and interests." (Opp'n 64:4-7.)

10         The Tribe's punitive damages prayer against APC is

11  predicated on fraud stemming from APC's breach of its fiduciary

12  duty to the Tribe; however, based on a ruling supra, the FAC

13  fails to plausibly allege APC owed the Tribe a fiduciary duty.

14  Therefore, APC's dismissal motion is granted.

15                         **III. Conclusion**

16         For the stated reasons, the dismissal motions are

17  GRANTED in part and DENIED in part. Plaintiff is granted (21)

18  days leave from the date on which this order is filed to file a

19  Second Amended Complaint addressing the deficiencies in any

20  dismissed claim that was not dismissed without leave to amend.

21  Dated:  August 13, 2015

22

23

24                         GARLAND E. BURRELL, JR.
                           Senior United States District Judge

25

26

27

28

                              24