UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASKENTA BAND OF NOMLAKI INDIANS; and PASKENTA ENTERPRISES CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>INES CROSBY; JOHN CROSBY; LESLIE LOHSE; LARRY LOHSE; TED PATA; JUAN PATA; CHRIS PATA; SHERRY MYERS; FRANK JAMES; UMPQUA BANK; UMPQUA HOLDINGS CORPORATION; CORNERSTONE COMMUNITY BANK; CORNERSTONE COMMUNITY BANCORP; JEFFERY FINCK; GARTH MOORE; GARTH MOORE INSURANCE AND FINANCIAL SERVICES, INC.; ASSOCIATED PENSION CONSULTANTS, INC.; THE PATRIOT GOLD & SILVER EXCHANGE, INC. and NORMAN R. RYAN,<br><br>Defendants[1]. | No. 2:15-cv-00538-MCE-CMK<br><br>**MEMORANDUM AND ORDER** |

---

[1] Defendants Robert M. Haness and Haness & Associates, LLC ("Haness") filed a dismissal motion. (ECF No. 141.) However, Plaintiffs and Haness reached a settlement agreement dismissing all asserted claims against Haness. (Notice of Voluntary Dismissal, ECF No. 193.) In light of this settlement agreement Haness dismissal motion need not be addressed and is DENIED as moot.

The following Defendants seek dismissal of claims alleged in Plaintiffs Paskenta Band of Nomlaki Indians and Paskenta Enterprises Corporation's (collectively "Plaintiffs") Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure ("Rule") 12(b)(6): Umpqua Bank, Umpqua Holdings Corporation (collectively, "Umpqua Defendants"), Cornerstone Community Bank, Cornerstone Community Bancorp, Jeffery Finck (collectively, "Cornerstone Defendants"), and Associated Pension Consultants, Inc. ("APC"). For the reasons set forth below, the dismissal motions are GRANTED in part and DENIED in part.

## **FACTUAL BACKGROUND**[2]

The Paskenta Band of Nomlaki Indians ("the Tribe") employed Ines Crosby, John Crosby, Leslie Lohse and Larry Lohse (collectively, the "Employee Defendants") in executive positions for more than a decade. Plaintiffs contend that the Employee Defendants used their positions to embezzle millions of dollars from the Tribe and its principal business entity, the Paskenta Enterprises Corporation ("PEC"). According to Plaintiffs, the Employee Defendants stole these funds from Plaintiffs' bank accounts at Umpqua Bank and Cornerstone Bank by withdrawing large sums for their personal use. Plaintiffs further allege that the Employee Defendants caused the Tribe to invest in two unauthorized retirement plans for the Employee Defendants' personal benefit: a defined benefit plan ("Tribal Pension Plan") and a 401(k) ("Tribal 401(k)") (collectively "Tribal Retirement Plans"). The Employee Defendants allegedly kept their activities hidden from Plaintiffs through <u>inter alia</u>, harassment, intimidation, and cyber-attacks on the Tribe's computers.

Plaintiffs go on to assert that the Umpqua Defendants, Cornerstone Defendants, and APC knowingly assisted the Employee Defendants in aspects of their scheme. The

---

[2] Unless otherwise noted, the allegations in this section are drawn directly, and in some cases verbatim, from the allegations of Plaintiffs' Complaint.

contend that the Umpqua Defendants and the Cornerstone Defendants controlled banks where Plaintiffs maintained accounts, and, despite knowing the Employee Defendants were withdrawing money from these accounts for their personal benefit, permitted the Employee Defendants to continue making withdrawals and failed to notify Plaintiffs of the Employee Defendants' actions. APC, as the third-party administrator for the Tribal Retirement Plans, assisted the Employee Defendants in setting up and administering the unauthorized Tribal Retirement Plans.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

3

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Id. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment. . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility. . . .")).

///

///

**CONSIDERATION OF DOCUMENTS BEYOND THE PLEADINGS**

Plaintiffs include in their opposition brief a request that judicial notice be taken of several prior orders in this action;[3] prior case filings in this action;[4] and "FAC Paragraphs ¶¶ 632-653, 655-674 which were deleted inadvertently by counsel for Plaintiff[s]." (Pls.' Req. for Judicial Notice in Supp. of Opp'n to Mots. to Dismiss the SAC ("RJN") ¶¶ 1, 2, 3, ECF No. 158-2.) The requested documents are already part of the record in this case, and the request is denied as unnecessary.

Further, Plaintiffs seek judicial notice of Exhibits A through J which contain excerpts from the deposition of Shirley Shrumpf who is the store manager of Umpqua Bank's Orland, California, branch. (RJN ¶¶ 4-13.) "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This portion of Plaintiffs' request is unopposed. Therefore, judicial notice is taken of Exhibits A up to and including J.

Lastly, Plaintiffs seek judicial notice of Exhibits K through Q. Exhibits K through O contain evidence of the locations of various Wells Fargo Branches. (RJN ¶¶ 14-18.) Cornerstone Defendants oppose this portion of Plaintiffs' request arguing that "[t]he location of Wells Fargo Branch locations in and around the North Sacramento Valley are irrelevant to any issue raised in the motion before the Court." (Objection to RJN 3:15-17,

---

[3] Specifically: (1) Order Denying Defendants' Motion for a Stay, or in the Alternative, Dismissal of Plaintiffs' Amended Complaint Pending Arbitration; and Granting Plaintiffs' Motion to Stay Arbitration, Dkt. No. 79; (2) Order Granting in Part and Denying in Part Motions to Dismiss the First Amended Complaint, Dkt. No. 101; (3) Order Denying Defendants' Request for Certification of Ruling in Order for Interlocutory Appeal, Dkt. No. 137.

[4] Specifically: "Plaintiffs' First Amended Complaint, Dkt. No. 30; Cornerstone Defendants' Motion to Dismiss the FAC, see Dkt. 50-1; Umpqua Bank and Umpqua Holdings Corporation's Motion to Dismiss the FAC, Dkt. No. 145-1; APC's Motion to Dismiss the First Amended Complaint and to Strike Portions of First Amended Complaint, Dkt. No. 53-1; Plaintiffs' Omnibus Opposition to Defendants' Motion to Dismiss the First Amended Complaint, Dkt No. 73; Answer of Ines Crosby to Second Amended Complaint, Dkt. No. 148; Answer of John Crosby to Second Amended Complaint, Dkt. No. 149; Answer of Leslie Lohse to Second Amended Complaint, Dkt. No. 152; and Answer of Larry Lohse to Second Amended Complaint, Dkt. No. 151." (RJN 2.)

ECF No. 169-1.) When a request for judicial notice contains "materials . . . therein [that] are not relevant to the disposition" of the motion sub judice the request for judicial notice is properly denied. Cuellar v. Joyce, 596 F.3d 505, 512 (9th Cir. 2010). Plaintiffs have failed to demonstrate that Exhibits K through O are relevant to the Court's decision in this matter. Therefore, Plaintiffs' requests for judicial notice of Exhibits K through O are DENIED.

Exhibits P and Q are URL printouts concerning Wells Fargo Company's Related Person Transaction Policy (Exhibit P) and the Citigroup Policy on Related Party Transactions (Exhibit Q). (RJN ¶¶ 19, 20.) Cornerstone Defendants argue that "Plaintiffs have produced no evidence sufficient to support a finding that these policies are what they purport to be—i.e., the policies of the banks to which they are attributed." (Objection to RJN 4:23-24.) "As judicial notice is appropriate only for facts whose accuracy cannot reasonably disputed, it is inappropriate for the Court to take judicial notice of facts on a webpage whose source and reliability are unknown." Estate of Fuller v. Maxfield & Oberton Holdings, LLC, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012). Plaintiff[s] "ha[ve] provided a web address, but no information about who maintains this website or how information on th[is] website is obtained." Id. Accordingly, Plaintiffs' requests for judicial notice of Exhibits P and Q are DENIED.

## ANALYSIS

A.    **Negligence: Breach of Duty of Care**

Umpqua Defendants, Cornerstone Defendants and APC each seek dismissal of Plaintiffs' negligence claim asserted against each of the aforementioned defendants, arguing the SAC fails to plausibly allege that the aforementioned defendants owed Plaintiffs' the heightened duty of care necessary to support Plaintiffs' allegations of breach.

///

1. **The Banking Defendants**

Banks "ha[ve] a duty to act with reasonable care in [their] transactions with depositors"; this duty "is an implied term in the contract between the bank and its depositor." Chazen v. Centennial Bank, 61 Cal. App. 4th 532, 543 (1998). However, "[t]his contractual relationship does not involve any implied duty to supervise account activity, or to inquire into the purpose for which the funds are being used." Id. at 537. California law "require[s] banking transactions to be processed quickly and automatically," and "[u]nder this system favoring expedited handling of funds transfers, a bank cannot be expected to track transactions in fiduciary accounts or to intervene in suspicious activities." Id. at 539. A "bank is not liable for the misappropriation [of a customer's] funds by [its authorized signatories], . . . **unless the bank has knowledge, actual or constructive, of such misappropriation**." Blackmon v. Hale, 1 Cal.3d 548, 556 (1970) (emphasis added).

   a. **Umpqua Defendants**

Umpqua Defendants argue that Plaintiffs' allegations are insufficient to support their claim that Umpqua breached their duty of care owed to Plaintiffs; specifically, Employee Defendants Crosby and Lohse continued to be the Tribe's authorized signers until Umpqua received written notice revoking such authorization and thus Umpqua had no implied duty to supervise account activity, or to inquire into the purpose for which Plaintiffs' funds were being used.  (Umpqua Defs.' Mot. to Dismiss Pls.' FAC ("Umpqua Mot.") 10:3-10, ECF No. 145).

Plaintiffs allege that RICO Ringleader Ines Crosby was consistently assisted in making large withdrawals from the Tribal Umpqua Bank accounts by Umpqua Bank employees, (SAC ¶ 320); that Crosby's withdrawals triggered scrutiny under internal Umpqua Bank policies and procedures and those mandated under federal law (id. at ¶ 323); and that Umpqua Bank continued to allow Crosby to make large withdrawals after it was widely reported in the local press that Crosby had been suspended from the Tribe, removed from his position and was suspected of stealing or converting millions of dollars

from the tribe. (Id. at ¶ 327).

Despite these allegations, Plaintiffs have not plausibly alleged the Umpqua Defendants had actual or constructive knowledge of the Employee Defendants' alleged misappropriation. They have not plausibly pled that transactions triggering "federal and internal reporting requirements" indicate misappropriation. Therefore, Plaintiffs negligence claim against Umpqua Defendants is dismissed. However, Umpqua Defendants have not demonstrated that amendment is futile and Plaintiffs are thus granted leave to amend their negligence claim.

   b. **Cornerstone Defendants**

The Cornerstone Defendants contend that Plaintiffs fail to plausibly allege that Cornerstone Defendants breached the duty of care owed to Plaintiffs. (Memo. of P & A in Supp. of the Cornerstone Defs.' Mot. to Dismiss Claims in the SAC. ("Cornerstone Mot.") 4:14-21, ECF No. 139-1).

Plaintiffs allege in their SAC: RICO Ringleader John Crosby withdrew at least approximately [?[ $430,000 of the Tribe's money from Cornerstone PEC Account X to purchase luxury vehicles for himself and other Employee Defendants (SAC ¶ 423); the Employee Defendants used approximately $1.2 million of the Tribe's money to pay for tickets and other expenses for sporting events attended by the Employee Defendants (id. at ¶ 428); and Cornerstone Bank facilitated this conversion of Tribal money by the Employee Defendants by executing the foregoing and other similar transactions by the Employee Defendants and the Tribe's money. (Id. at ¶427.)

Plaintiffs' allegations do not plausibly allege that any of the Cornerstone Defendants had actual or constructive knowledge of the Employee Defendants' conversion of tribal funds. Specifically, Plaintiffs' allegation that local news reports triggered a heightened duty of inquiry fails to adequately support their negligence claim because there is no evidence Cornerstone Defendants were aware of such reports. Therefore, Plaintiffs' SAC fails to plausibly allege facts supporting their argument that the Cornerstone Defendants had a duty to further inquire into the banking activities of the

Employee Defendants. Accordingly, the Cornerstone Defendants' dismissal motion is GRANTED as to Plaintiffs' negligence claim. However, Cornerstone Defendants have not demonstrated that amendment is futile and Plaintiffs are thus granted leave to amend their negligence claim.

### 2. APC

APC argues that Plaintiffs fail to plausibly allege that APC breached their duty of care owed to Plaintiffs. (Memo. of P & A in Supp. of APC's Mot. to Dismiss ("APC Mot.") 5:18, ECF No. 143-1.) Specifically, APC argues that the mere fact that the Tribe limited plan participation does not on its own create a breach of duty on the part of APC. (Id. at 6:28-7:3.)

To assert a claim of professional negligence Plaintiffs must plausibly allege that Defendant breached "the duty of the [defendant] to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise." Budd v. Nixen, 6 Cal. 3d 195, 200 (1971) (superseded by statute on other grounds, Adams v. Paul, 11 Cal. 4th 583 (1995)).

Plaintiffs allege that the Employee Defendants diverted millions of dollars of Tribal money by causing the Tribe to establish two different retirement plans with the assistance of APC. (Id. at ¶ 209.) Specifically, Plaintiffs allege that APC followed the direction and instruction of RICO Ringleaders John Crosby and Leslie Lohse in connection with the establishment and modification of the Tribal Pension (id. at ¶ 228); that the establishment and any modification of the Tribe's defined pension plan and 401(k) required authorization from the Tribal Council (id. at ¶ 249); that APC was aware of this and was aware that no such authorizations were received (id. at ¶ 250); and that because of the allegedly unusual structure of these plans, APC knew Employee Defendants intended to use the Tribal Retirement Plans to convert Tribal funds and thus assisted the Employee Defendants in accomplishing this goal (id. at ¶¶ 215, 216).

Plaintiffs fail to plausibly allege that the desired structure of the retirement plans was sufficient to raise awareness of the Employee Defendants' aims since the Employee

9

Defendants had apparent authority to engage in such establishment and modification. Therefore APC's motion to dismiss Plaintiffs' negligence claim is GRANTED. However, APC has not demonstrated that amendment is futile and Plaintiffs are thus granted leave to amend their negligence claim.

### B. Breach of Contract

#### 1. Umpqua Defendants

Plaintiffs' breach of contract claim against Umpqua Defendants is predicated on the same duty of inquiry as Plaintiffs' negligence claim. Therefore, for the reasons articulated supra at 1.a.i., Plaintiffs' breach of contract claim against Umpqua Defendants is dismissed. However, Umpqua Defendants have not demonstrated that amendment is futile and Plaintiffs are thus granted leave to amend their breach of contract claim.

#### 2. Cornerstone Defendants

Cornerstone Defendants failed to squarely raise any breach of contract defense or objection in their initial dismissal motion, even though the arguments were available to Cornerstone Defendants when they originally sought to dismiss Plaintiffs' First Amended Complaint (FAC). Under Rule 12(g), "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g). Thus "a series of [Rule] 12(b)(6) motions should not be permitted because that results in delay and encourages dilatory tactics." Aetna Life Ins. Co. v. Alla Med. Servs., Inc., 855 F.2d 1470, 1475 n.2 (9th Cir. 1988); see also Fed. Agr. Mortg. Corp. v. It's a Jungle Out There, Inc., No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) ("[T]he weight of authority . . . holds that where the complaint is amended after the defendant has filed a Rule 12(b) motion, the defendant may not thereafter file a second Rule 12(b) motion asserting objections or defenses that could have been asserted in the first motion.") Accordingly, this portion of the Cornerstone Defendants' dismissal motion is not considered.

### C. Aiding and Abetting Claims

Umpqua Defendants, APC, and Cornerstone Defendants each seek dismissal of Plaintiffs' claims that the aforementioned defendants aided and abetted the Employee Defendants' conversion of Tribal assets and the Employee Defendants' breach of their fiduciary duty owed to Plaintiffs. Umpqua Defendants, APC and Cornerstone Defendants contend that the SAC fails to plausibly allege that they had actual knowledge of the Employee Defendants' wrongdoing.

> Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005) (alterations in original) (citing Saunders v. Super. Ct. of L.A., 27 Cal. App. 4th 832, 846 (1994)). "[A]iding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge," which "requires more than a vague suspicion of wrongdoing." In re First Alliance Mortg. Co., 471 F.3d 977, 993, n.4 (9th Cir. 2006). "[T]o satisfy the knowledge prong [Plaintiffs must plausibly allege], the defendant . . . [had] 'actual knowledge of [an Employee Defendants' conversion or breach of fiduciary duty owed to Plaintiffs.]" Id. at 993 (citation omitted).

#### 1. Umpqua Defendants

Umpqua Defendants contend that Plaintiffs' aiding and abetting claim is defeated by the undisputed fact that Ms. Crosby and Ms. Lohse were at all relevant times authorized signers on the accounts and as a result Umpqua was entitled to presume that there was a legitimate purpose for each transaction. (Mot. 8:16-20.)

Plaintiffs allege in the SAC that Umpqua Defendants had actual knowledge of the Employee Defendants' conversion of Tribal assets since: RICO Ringleader Ines Crosby was consistently assisted in making large, unauthorized withdrawals from the Tribal

Umpqua Bank Accounts by the same Umpqua Bank employees (SAC ¶ 320) and Abettor Defendant Umpqua Bank allowed Crosby to make large withdrawals above the amount that requires the Bank to file a Currency Transaction Report with the Internal Revenue Service from the Tribe's bank accounts at Umpqua Bank. Further, according to Plaintiffs, Crosby continued to make such withdrawals after it was widely reported in the local press that Crosby and the other Employee Defendants had been suspended from the Tribe, removed from their positions and were suspected of stealing or converting millions of dollars from the Tribe.  (Id. at ¶ 327).

Plaintiffs' allegations are insufficient to plead a plausible claim that the Umpqua Defendants had actual knowledge of the Employee Defendants' alleged conversion of Tribal assets because of the Employer Defendants' status as authorized signatories on the account. Therefore, these claims are dismissed. However, Umpqua Defendants have not demonstrated that amendment is futile and Plaintiffs are granted leave to amend their aiding and abetting claim.

### 2. **Cornerstone Defendants**

Cornerstone Defendants failed to raise objections to Plaintiffs' aiding and abetting claims in the Motion to Dismiss the FAC. Therefore, for the reasons discussed supra at B.1.., this portion of Cornerstone Defendants' dismissal motion is not considered.

### 3. **APC**

APC contends that "Plaintiffs fail to allege that APC had actual direct knowledge that the Employee Defendants were actually converting the Tribe's money, and that APC knowingly assisted them in converting this money." (Id. at 12:27-13:1.)

Plaintiffs allege that the manner in which the Employee Defendants instructed APC to administer the Tribal Retirement Plans indicated to APC that the Employee Defendants intended to use these plans as a short-term vehicle to steal from the Tribe, and that the Employee Defendants' instructions, coupled with APC's retirement plan administration experience, are sufficient to support drawing a reasonable inference that APC had actual knowledge of the Employee Defendants' alleged thievery intentions.

Specifically, Plaintiffs allege "the unique structuring and provisions of the Tribe's two plans—when viewed as a whole for each Plan" made "the RICO Ringleaders and RICO Defendant Shelly Myers' [?] unlawful and disloyal aims in [creating and effecting] these Tribal Retirement Plans" clear to APC. (FAC ¶ 758.)

These allegations are insufficient to plead a plausible claim that APC had actual knowledge of the Employee Defendants' alleged theft of Plaintiffs' money, since they do not plausibly allege that APC knew the irregularity in the Tribal Retirement Plans was the result of the Employee Defendants' intent to convert Plaintiffs' funds. Therefore, the claim is dismissed. However, APC has not demonstrated that amendment is futile and Plaintiffs are thus granted leave to amend their aiding and abetting claim.

### D. Restitution (Quasi-Contract)

> [I]n California, there is not a standalone cause of action for "unjust enrichment," which is synonymous with "restitution." However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." The return of that benefit is the remedy "typically sought in a quasi-contract cause of action." When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution."

Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). Therefore, Plaintiffs' restitution claim is construed as a quasi-contract claim.

Plaintiffs argue that Umpqua Defendants and APC are attempting to relitigate issues briefed and decided by this Court and such tactics are barred under the law of the case doctrine. (Opp'n to Mot. 11:18-20, ECF No. 158.)

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs[;] [u]nder the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." United States v. Lummi Nation, 763 F.3d 1180, 1184 (9th Cir. 2014) (internal quotation marks and citations omitted). "The 'law of the case [doctrine] acts as a bar only when the issue in question was actually considered and decided [previously].'"

13

1  <u>United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO,
2  Inc.</u>, 512 F.3d 555, 564 (9th Cir. 2008) (quoting <u>United States v. Cote</u>, 51 F.3d 178, 181
3  (9th Cir. 1995)). Here, the Court "ha[s] not previously decided" on any substantive basis
4  whether Plaintiffs have plausibly alleged a quasi-contract claim. <u>United States v. Lepp</u>,
5  446 F. App'x. 44, 46 (9th Cir. 2011) (citing <u>Cote</u>, 51 F.3d at 181).

6        Therefore, neither APC nor the Umpqua defendants are precluded from
7  defending against Plaintiffs' quasi-contract claim, and the Court consequently will
8  consider the merits of that claim. Umpqua Defendants, APC and Cornerstone
9  Defendants seek dismissal of Plaintiffs' restitution claims, arguing Plaintiffs are
10 precluded from plausibly alleging a quasi-contract claim due to the existence of express
11 binding agreements between the Tribe and each of the above-listed defendants.

12       "[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie
13 where, as here, express binding agreements exist and define the parties' rights." <u>Cal.
14 Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.</u>, 94 Cal. App. 4th 151, 172 (2001);
15 <u>see also</u> <u>Paracor Fin., Inc. v. Gen. Elec. Capital Corp.</u>, 96 F.3d 1151, 1167 (9th Cir.
16 1996) ("Under both California and New York law, unjust enrichment is an action in quasi-
17 contract, which does not lie when an enforceable, binding agreement exists defining the
18 rights of the parties").

19       Since an express contract existed between Cornerstone Defendants and the
20 Tribe, Umpqua Defendants and the Tribe, and APC and the Tribe, each of Plaintiffs'
21 claims for restitution is dismissed with prejudice.

22     **E.  Punitive Damages**

23       APC argues the Tribe's punitive damages prayer against it should be dismissed
24 or, in the alternative, stricken since "Plaintiffs' defective charging allegations are
25 conclusory statements completely unsupported by facts that establish the requisite
26 elements of malice, oppression or fraud." (APC Mot. 18:8-9.)

27       The Tribe's punitive damages prayer against APC is predicated on fraud
28 stemming from APC's breach of its fiduciary duty to the Tribe; however, based on the

ruling supra at A.2., the SAC fails to plausibly allege APC owed the Tribe any fiduciary duty to further inquire into the Employee Defendants' seemingly authorized activity. Therefore, APC's dismissal motion is GRANTED as to the Tribe's punitive damages prayer. However, APC has not demonstrated that leave to amend would be futile and Plaintiffs are thus granted leave to amend their punitive damages prayer against APC.

## CONCLUSION

For the above stated reasons, Cornerstone Defendants' Motion to Dismiss (ECF No. 139) is GRANTED with leave to amend as to Plaintiffs' common law negligence claim; DENIED as to Plaintiffs' breach of contract and aiding and abetting claim; and GRANTED with prejudice as to Plaintiffs' restitution claim. APC's Motion to Dismiss (ECF No. 143) is GRANTED with leave to amend as to Plaintiffs' common law negligence claim, aiding and abetting claim, and punitive damages prayer and GRANTED with prejudice as to Plaintiffs' restitution claim. Umpqua Defendants' Motion to Dismiss (ECF No. 145) is GRANTED with leave to amend as to Plaintiffs' common law negligence, breach of contract, and aiding and abetting claim and GRANTED with prejudice as to Plaintiffs' restitution claim. Finally, as indicated above, given the settlement reached as to the Haness Defendants, their Motion to Dismiss (ECF No. 141) is DENIED as moot.

Plaintiffs are granted thirty (30) days leave from the date on which this order is filed to file a Third Amended Complaint addressing the deficiencies in the aforementioned dismissed claims that were granted with leave to amend. Failure to file that amended pleading may result in this matter being dismissed without further notice.

IT IS SO ORDERED.

Dated: April 15, 2016

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT