UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASKENTA BAND OF NOMLAKI INDIANS; and PASKENTA ENTERPRISES CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>INES CROSBY; JOHN CROSBY; LESLIE LOHSE; LARRY LOHSE; TED PATA; JUAN PATA; CHRIS PATA; SHERRY MYERS; FRANK JAMES; UMPQUA BANK; UMPQUA HOLDINGS CORPORATION; CORNERSTONE COMMUNITY BANK; CORNERSTONE COMMUNITY BANCORP; JEFFERY FINCK; GARTH MOORE; GARTH MOORE INSURANCE AND FINANCIAL SERVICES, INC.; ASSOCIATED PENSION CONSULTANTS, INC.; THE PATRIOT GOLD & SILVER EXCHANGE, INC.; GDK CONSULTING LLC; and GREG KESNER,<br><br>Defendants. | No. 2:15-cv-00538-MCE-CMK<br><br>**ORDER AND MEMORANDUM** |

The following Defendants seek dismissal of claims alleged in Plaintiffs Paskenta Band of Nomlaki Indians and Paskenta Enterprises Corporation's Third Amended Complaint ("TAC") under Federal Rule of Civil Procedure ("Rule") 12(b)(6):  Umpqua

1

Bank, Umpqua Holdings Corporation (collectively, the "Umpqua Defendants") and Associated Pension Consultants, Inc. ("APC"). Additionally, Garth Moore and Garth Moore Insurance (collectively, "Moore") seek dismissal of the claims alleged against them under Rule 12(c). For the reasons set forth below, all three motions are GRANTED with prejudice.[1]

## FACTUAL ALLEGATIONS[2]

The Paskenta Band of Nomlaki Indians ("the Tribe") employed Ines Crosby, John Crosby, Leslie Lohse and Larry Lohse (collectively, the "Employee Defendants") in executive positions for more than a decade. Plaintiffs contend that the Employee Defendants used their positions to embezzle millions of dollars from the Tribe and its principal business entity, the Paskenta Enterprises Corporation ("PEC"). According to Plaintiffs, the Employee Defendants stole these funds from Plaintiffs' bank accounts—including accounts at Umpqua Bank—by withdrawing large sums for their personal use. Plaintiffs further allege that the Employee Defendants caused the Tribe to invest in two unauthorized retirement plans for the Employee Defendants' personal benefit: a defined benefit plan ("Tribal Pension Plan") and a 401(k) ("Tribal 401(k)") (collectively, "Tribal Retirement Plans"). The Employee Defendants allegedly kept their activities hidden from Plaintiffs by various means including harassment, intimidation and cyber-attacks on the Tribe's computers.

Plaintiffs go on to assert that Umpqua Defendants, APC and Moore knowingly assisted the Employee Defendants in aspects of their scheme. They contend that the Umpqua Defendants controlled banks where Plaintiffs maintained accounts and, despite knowing the Employee Defendants were withdrawing money from these accounts for

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered the motions submitted on the briefs in accordance with Local Rule 230(g).

[2] Unless otherwise noted, the allegations in this section are drawn directly, and in some cases verbatim, from the allegations of Plaintiffs' Complaint.

2

their personal benefit, permitted the Employee Defendants to continue making withdrawals and failed to notify Plaintiffs of the Employee Defendants' actions. According to Plaintiffs, APC and Moore, as the third-party administrator for the Tribal Retirement Plans and financial advisor, respectively, assisted the Employee Defendants in setting up and administering the unauthorized Tribal Retirement Plans.

This Court previously granted motions to dismiss claims made against Umpqua Defendants and APC in the Second Amended Complaint ("SAC"), ECF No. 132, for failure to state a claim, albeit with leave to amend some of the dismissed claims, Mem. & Order, ECF No. 203.  In response, Plaintiffs filed their TAC.  ECF No. 212.  Once again, Umpqua Defendants and APC filed motions to dismiss the claims against them for failure to state a claim.  ECF Nos. 228, 269.  Moore also joined APC and the Umpqua Defendants in moving to dismiss the claims against them.  ECF No. 275.

## LEGAL STANDARD

### A.   Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[3] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

3

1  recitation of the elements of a cause of action will not do." Id. (citation omitted).  A court
2  is not required to accept as true a "legal conclusion couched as a factual allegation."
3  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).
4  "Factual allegations must be enough to raise a right to relief above the speculative level."
5  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal
6  Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain
7  something more than "a statement of facts that merely creates a suspicion [of] a legally
8  cognizable right of action")).

9  　　　　Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket
10  assertion, of entitlement to relief."  Id. at 555 n.3 (citation omitted).  Thus, "[w]ithout some
11  factual allegation in the complaint, it is hard to see how a claimant could satisfy the
12  requirements of providing not only 'fair notice' of the nature of the claim, but also
13  'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94–95).  A
14  pleading must contain "only enough facts to state a claim to relief that is plausible on its
15  face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from
16  conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-
17  pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those
18  facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting
19  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

20  　　　　A court granting a motion to dismiss a complaint must then decide whether to
21  grant leave to amend.  Leave to amend should be "freely given" where there is no
22  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
23  to the opposing party by virtue of allowance of the amendment, [or] futility of the
24  amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962); see also Eminence Capital,
25  LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as
26  those to be considered when deciding whether to grant leave to amend).  Dismissal
27  without leave to amend is proper only if it is clear that "the complaint could not be saved
28  by any amendment."  Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th

Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

### B.    Rule 12(c)

A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6). Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). The primary distinction between a Rule 12(b)(6) motion and a motion for judgment on the pleadings is timing. Rule 12(b)(6) motions are typically brought before the defendant files an answer, while a motion for judgment on the pleadings can only be brought after the pleadings are closed. See Fed. R. Civ. P. 12(c); Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Generally, all defendants must have provided an answer for the pleadings to be considered closed. See Watson v. County of Santa Clara, No. C-06-04029, 2007 WL 2043852, at *1 (N.D. Cal. Jul. 12, 2007); William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial: California & 9th Circuit Edition §§ 9:323–24, Westlaw (database updated Mar. 2016). However, under certain circumstances, some courts have found Rule 12(c) motions timely even before all defendants have filed answers. See, e.g., Whitson v. Bumbo, No. C 07-05597 MHP, 2009 WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009).

Although Rule 12(c) does not mention leave to amend, courts have discretion in appropriate cases to grant a Rule 12(c) motion with leave to amend, or to simply grant dismissal of the action instead of entry of judgment. See Longberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); Carmen v. S.F. Unified Sch. Dist., 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

///

///

///

## ANALYSIS

### A. Timeliness of Rule 12(c) Motion

Plaintiffs argue that Moore's Rule 12(c) motion for judgment on the pleadings ("MJOP") is premature because, "[t]hree defendants have not yet answered the TAC—APC, Umpqua Bank, and Umpqua Holding Company." Pls.' Opp. to MJOP 4:17–21, ECF No. 278. While the general rule is that a Rule 12(c) motion is premature when made before all defendants have filed motions, some courts have exercised discretion to allow such motions in certain situations where all of the defendants have not yet filed answers. For example, in Noel v. Hall, No. CV99-649-AS, 2005 WL 2007876 (D. Ore. Aug. 16, 2005), the court considered a Rule 12(c) motion when two of the defendants failed to file an answer after more than five years, id. at *2. Likewise, in Moran v. Peralta Community College District, 825 F. Supp. 891 (N.D. Cal. 1993), the court found the pleadings "closed for purposes of" Rule 12(c) because the party that had not yet filed an answer had not yet even been served, id. at 894; see also Redon v. Jordan, No. 13cv1765 WQH (KSC), 2015 WL 9244288, at *4 (S.D. Cal. Dec. 17, 2015) (finding a Rule 12(c) motion timely under similar circumstances).

In this case, the circumstances are less extreme. All parties have been served, and APC and Umpqua Defendants have simply opted to make motions to dismiss instead of file answers. However, it makes little sense to require Moore to wait until APC and the Umpqua Defendants file their answers before considering its dismissal request under Rule 12(c). Cf. Whitson v. Bumbo, No. C 07-05597 MHP, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ("It makes no sense to require [one defendant] to wait for [a] co-defendant['s] answer before allowing [it] to file a Rule 12(c) motion . . . ."). The Umpqua Defendants' and APC's answers would have no effect on Moore's Rule 12(c) motion. Moreover, given that this Court is now dismissing the claims against APC and the Umpqua Defendants with prejudice—removing the only parties that have yet to file answers—it makes even less sense to refrain from ruling on Moore's Rule 12(c) motion.

Doing so would simply require Moore to refile a new motion that is identical to the fully briefed motion before the Court now.

### B. Negligence: Breach of Duty of Care

Umpqua Defendants, APC and Moore seek dismissal of Plaintiffs' negligence claims asserted against each of them, arguing the TAC fails to plausibly allege that they owed Plaintiffs a duty of care, which is necessary to support Plaintiffs' allegations of breach.

#### 1. Umpqua Defendants

Banks "ha[ve] 'a duty to act with reasonable care in [their] transactions with depositors'"; this duty "is an implied term in the contract between the bank and its depositor." Chazen v. Centential Bank, 61 Cal. App. 4th 532, 543 (1998) (citation omitted). However, "[t]his contractual relationship does not involve any implied duty 'to supervise account activity' or 'to inquire into the purpose for which the funds are being used.'" Id. at 537 (citations omitted). California law "require[s] banking transactions to be processed quickly and automatically," and "[u]nder this system favoring expedited handling of funds transfers, a bank cannot be expected to track transactions in fiduciary accounts or to intervene in suspicious activities." Id. at 539. A "bank is not liable for the misappropriation [of a customer's] funds by [its authorized signatories], . . . unless the bank has knowledge, actual or constructive, of such misappropriation." Blackmon v. Hale, 1 Cal. 3d 548, 556 (1970). Accordingly, the Umpqua Defendants breached a duty of care owed Plaintiffs only if they knew the Employee Defendants were misappropriating the Tribe's funds.

The Umpqua Defendants argue that Plaintiffs' allegations are insufficient because Employee Defendants Ines Crosby and Leslie Lohse continued to be the Tribe's authorized signers until Umpqua received written notice revoking such authorization and thus Umpqua had no implied duty to supervise account activity, or to inquire into the purpose for which Plaintiffs' funds were being used. Umpqua Defs.' Mot to Dismiss Pls.' TAC ("Umpqua MTD") 6:24–7:12, ECF No. 228.

Plaintiffs, on the other hand, allege that Employee Defendant Ines Crosby was consistently assisted in making large withdrawals from the Tribe's Umpqua Bank accounts, TAC ¶ 362–67, ECF No. 212; that Ines Crosby's withdrawals triggered scrutiny under both federally mandated and internal Umpqua Bank policies and procedures, id. ¶ 394; and that Umpqua Bank continued to allow Ines Crosby to make withdrawals after local press widely reported that Ines Crosby had been suspended from the Tribe under suspicion of stealing or converting millions of dollars from the Tribe, id. ¶ 390. The SAC relied on these same allegations. This Court dismissed the negligence claims pled against the Umpqua Defendants, however, because none of these facts plausibly alleged that the Umpqua Defendants had actual or constructive knowledge of any wrongful behavior by the Employee Defendants.

In Plaintiffs' TAC, Plaintiffs provide no new allegations as to the Umpqua Defendants. Plaintiffs merely reiterate that the Umpqua Defendants knew that the Employee Defendants were under suspicion of stealing or converting millions of dollars from the Tribe. These allegations in the SAC did not make it sufficiently plausible that Umpqua Defendants had actual or constructive knowledge of any wrongdoing by the Employee Defendants, nor did they make it sufficiently plausible that they breached any duty of care toward Plaintiffs. Mem. & Order 8:2–6, ECF No. 203. Mere reiteration of the same allegations, reordered and reworded, does not support a different result.

Accordingly, Plaintiffs have failed to state a claim of negligence against the Umpqua Defendants and the Umpqua Defendants' motion to dismiss Plaintiffs' negligence claim is GRANTED. Additionally, because Plaintiffs have failed to add any new allegations despite being given leave to amend their SAC, it has become apparent that further leave to amend would be futile. Thus, the negligence claim against Umpqua Defendants is dismissed with prejudice.

### 2. APC

APC argues that Plaintiffs fail to plausibly allege APC breached a duty of care owed to Plaintiffs. Memo. of P. & A. in Supp. of APC's Mot. to Dismiss ("APC MTD")

1    5:11–12, ECF No. 250.  Specifically, APC argues that the mere fact the Tribe limited

2    plan participation does not on its own create a breach of duty on the part of APC, and

3    that Plaintiffs have not adequately pled APC knew of any wrongdoing on the part of the

4    Employee Defendants.  Id. at 9:8–10:6.

5         To assert a claim of professional negligence, Plaintiffs must plausibly allege that

6    APC breached "the duty of the [defendant] to use such skill, prudence, and diligence as

7    other members of his profession commonly possess and exercise."  Budd v. Nixen,

8    6 Cal.3d 195, 200 (1971).  Plaintiffs' negligence claims rely on allegations that APC

9    knew or should have known of the Employee Defendants' alleged misappropriation of

10   the Tribe's funds.  Plaintiffs allege that APC owed the Tribe a duty of care to not allow

11   the Employee Defendants to use its services to accomplish the Employee Defendants'

12   alleged unlawful purposes.

13        In their SAC, Plaintiffs alleged that APC followed the direction and instruction of

14   Employee Defendants John Crosby and Leslie Lohse to establish, administer and

15   terminate the Tribal Retirement Plans.  SAC ¶ 228, ECF No. 132.  Plaintiffs alleged that

16   the structure of the plans should have made APC aware of Employee Defendants'

17   unlawful use of the plan to steal from the Tribe.  Id. ¶¶ 215–16.  However, this Court

18   dismissed Plaintiffs' claims because John Crosby and Leslie Lohse had apparent

19   authority to create, modify and terminate the Tribal Retirement Plans.  Mem. & Order

20   9:27–10:2, ECF No. 203.  Plaintiffs' allegations, therefore, did not create a plausible

21   inference that APC breached any duty toward the Tribe that could survive a 12(b)(6)

22   motion.  The same allegations made in the TAC are also insufficient to state a claim of

23   negligence against APC.

24        In the TAC, though, Plaintiffs have added new allegations concerning the

25   termination and liquidation of the Tribal 401(k).  Plaintiffs allege that APC purposefully

26   delayed implementing a request to remove Defendant John Crosby as trustee of the

27   Tribal 401(k), allowing the Employee Defendants to use false documents to terminate

28   and liquidate the Tribal 401(k).  TAC ¶¶ 289, 297, ECF No. 212.  They argue that the

delay constitutes an "atypical" business practice that supports an inference of knowledge of the Employee Defendants' wrongdoing. Pls.' Opp. to APC MTD 9:14–19, ECF No. 276 (citing Woods v. Barnett Bank of Ft. Lauderdale, 765 F.2d 1004, 1009 (11th Cir. 1985); Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1120 (C.D. Cal. 2003)). By knowingly assisting the Employee Defendants in misappropriating the Tribe's assets, Plaintiffs claim, APC breached a duty of reasonable care owed to the Tribe. TAC ¶¶ 265–66.

These allegations still fail to make APC's knowledge sufficiently plausible to support a viable negligence claim. Plaintiffs allege that APC purposefully delayed removing Defendant John Crosby solely based on a form that was dated May 1, 2014. Id. ¶ 289. However, mere receipt of a request to change plan trustees on May 1 does not make it plausible that its implementation on July 1 was done with the object of aiding the Employee Defendants' alleged wrongdoing.[4] Indeed, the plan document states that a trustee must be given at least 30 days' written notice before removing the trustee. Decl. of William A. Munoz, Ex. B, § 8.08(B), at 83, ECF No. 280-2. While it is true that the notice period can be waived "where the Employer reasonably determines a shorter period or immediate removal is necessary to protect Plan assets," id., Plaintiffs have not alleged that any such a determination was made by Plaintiffs or communicated to APC. Furthermore, Plaintiffs allege that changes to the Tribal 401(k) require authorization from the Tribal Council, TAC ¶ 252, but Plaintiffs have not alleged that the Tribal Council provided any authorization for the removal of John Crosby as plan trustee on May 1.

---

[4] APC attached additional documents to its Reply in Support of its Motion to Dismiss. See Decl. of William A. Munoz, Ex. A, ECF No. 280-1, Decl. of William A. Munoz, Ex. C , ECF No. 286-1. The documents are all related to the change of plan trustees, such as additional forms APC claims were required to effectuate a change of trustee. These documents challenge the account of the trustee change included in Plaintiffs' TAC and amount to a factual dispute, which is inappropriate at this stage of the proceedings. Accordingly, the Court disregards them for the purposes of this motion. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Affidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint."). Conversely, the plan document and the email chain discussed infra were relied on by Plaintiffs in their TAC and form part of the basis of their claims, so it is proper to consider them here. See Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 511 (9th Cir. 2013) (finding it proper to consider a document that was not attached to the complaint when "the complaint 'necessarily relies' on that document").

1    Accordingly, from the facts alleged, it is not sufficiently plausible that there was any
2    delay in John Crosby's removal, much less that APC purposefully caused such a delay.
3    　　　　Therefore, Plaintiffs have not adequately pled that APC breached a duty of care
4    toward Plaintiffs, and APC's motion to dismiss the claim of negligence against it is
5    GRANTED.  Plaintiffs have been given multiple opportunities to state viable claims, but
6    have failed to do so.  The vast majority of their arguments in support of their TAC were
7    already rejected by this Court in dismissing the SAC.  Furthermore, the new allegations
8    found in the TAC appear to have been made in bad faith.  Plaintiffs have misconstrued
9    the process of removing a plan trustee by ignoring the 30-day notice requirement in their
10   pleadings.  Their allegations are also inconsistent.  On the one hand, Plaintiffs allege
11   that changes made by Defendants to the Tribal Retirement Plans required formal
12   approval by the Tribal Council.  But when Plaintiffs attempted to make a change—
13   remove John Crosby as trustee of the Tribal 401(k)—they allege that a single form
14   effects instant ratification.  Because Plaintiffs have been given multiple opportunities to
15   state a claim and because their TAC evinces bad faith, the dismissal is with prejudice.

16   　　　　　　　**3.　　Moore**

17   　　　　Plaintiffs' allegations against Moore in their TAC parallel those made against
18   APC, arguing that the structure of the Tribal Retirement Plans should have made Moore
19   aware of their unlawful purpose.  The only substantive difference in the allegations
20   against Moore is that it "came up with the idea for the Tribal Retirement Plans" and
21   referred the Employee Defendants to APC for the plans' execution.  TAC ¶¶ 263, ECF
22   No. 212.
23   　　　　These allegations do not make it sufficiently plausible that Moore breached any
24   duty toward the Tribe.  "[C]om[ing] up with the idea" of creating retirement plans does not
25   necessarily mean that Moore knew the alleged improper purpose of the plans.  Plaintiffs
26   do not allege, for example, that Moore advised the Employee Defendants to use
27   retirement plans to misappropriate the Tribe's funds, nor do Plaintiffs allege any facts
28   that would make such an allegation plausible.

Plaintiffs also allege that Moore was involved in purposefully delaying the removal of John Crosby as trustee of the Tribal 401(k). As described above, Plaintiffs have not sufficiently pled that removing John Crosby as plan trustee on July 1, 2014 made knowledge of the Employee Defendants' scheme sufficiently plausible. In fact, as to Moore, the only plausible inference from the facts alleged is the opposite conclusion of the one drawn by Plaintiffs.

On June 30, 2014, Moore employee Shelby Campiz allegedly wrote that "Andrew Alejandre should be the trustee now of the 401k," not John Crosby. TAC at ¶ 277. APC, however, responded by letting her know that the change was to be made on July 1. Id. ¶ 279. Campiz replied that the new trustees would also be willing to sign off on the allegedly unlawful liquidation of the Tribal 401(k). Decl. of Stuart G. Gross in Opp. to APC MTD, Ex. A, ECF No. 277.[5] The only plausible inferences from this alleged exchange are: (1) Moore tried to remove John Crosby as plan trustee before July 1; and (2) Moore believe that any alleged delay was immaterial. With nothing but innuendo, Plaintiffs attempt to use these events to infer the exact opposite of the only rational inferences possible.

Accordingly, Plaintiffs have not pled sufficient facts to show that Moore breached any duty toward the Tribe and Moore's motion to dismiss the claim is GRANTED. The allegations against Moore suffer from almost identical defects as those found in Plaintiffs' allegations against APC, which Plaintiffs have already been given multiple opportunities to amend. Further, the claims against Moore evince more bad faith than the claims made against APC. Plaintiffs twist the meaning of the alleged email exchange to allege the exact opposite of what is plain on its face. Thus, the dismissal is with prejudice.

///

---

[5] In Plaintiff's TAC, this section of the email exchange is omitted. See TAC ¶¶ 275–282, ECF No. 212. Instead, the TAC alleges that "APC[] . . . was aware that the Tribe's leadership would not allow the distribution to happen. Id. ¶ 283. However, in opposition to the APC MTD, Plaintiffs provided the full email exchange. See Decl. of Stuart G. Gross in Opp. to APC MTD, Ex. A, ECF No. 277. As discussed supra note 2, because the email exchange forms a basis of Plaintiffs' claims, it is proper to consider the document in full, instead of the truncated version provided in Plaintiffs' TAC.

### C. Aiding and Abetting Claims

Umpqua Defendants, APC and Moore each seek dismissal of Plaintiffs' claims that they each aided and abetted the Employee Defendants' conversion of Tribal assets and the Employee Defendants' breach of their fiduciary duty owed to Plaintiffs. Umpqua Defendants, APC and Moore contend that the TAC fails to plausibly allege that they had actual knowledge of the Employee Defendants' wrongdoing or that they were negligent in any manner that substantially assisted the Employee Defendants in their alleged wrongdoing against the Tribe.

> Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005) (alterations in original) (citing Saunders v. Superior Court, 27 Cal. App. 4th 832, 846 (1994)). "[A]iding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge," which "requires more than a vague suspicion of wrongdoing." In re First Alliance Mortg. Co., 471 F.3d 977, 993, n.4 (9th Cir. 2006). "[T]o satisfy the knowledge prong, [Plaintiffs must plausibly allege] the defendant . . . [had] 'actual knowledge of the specific primary wrong the defendant substantially assisted.'" Id. at 993 (quoting Casey, 127 Cal. App. 4th at 1145).

#### 1. Umpqua Defendants

Although Plaintiffs claim in the TAC that the Umpqua Defendants had actual knowledge of the Employee Defendants alleged conversion of Tribal assets, TAC ¶ 372, ECF No. 212, the TAC does not contain sufficient facts to make such knowledge plausible. As discussed above with regard to the negligence claim made against the Umpqua Defendants, large withdrawals that triggered heightened scrutiny both before and after the media widely reported that the Employee Defendants were under suspicion

of stealing or converting millions from the Tribe does not make it sufficiently plausible that Umpqua Bank had knowledge of any wrongdoing. This is because Employee Defendants Ines Crosby and Leslie Lohse continued to be the Tribe's authorized signers. Also as discussed above, Plaintiffs have not adequately alleged that the Umpqua Defendants breached any duty owed the Tribe.

Thus, the Umpqua Defendants' motion to dismiss the aiding and abetting claim against the Umpqua Defendants is GRANTED. Because the aiding and abetting claim suffers the same defects as the negligence claim against the Umpqua Defendants, the dismissal is with prejudice.

### 2. APC

Plaintiffs claim that the delay in removing Employee Defendant John Crosby as trustee of the Tribal 401(k) evinces knowledge of the Employee Defendants' wrongdoing. TAC ¶¶ 289, 297, ECF No. 212. Plaintiffs also claim that the manner in which APC structured and administered the Tribal Retirement Plans constitutes negligence that afforded the Employee Defendants substantial assistance in their scheme. Id. ¶¶ 244, 263–64.

However, as set forth above, Plaintiffs have not sufficiently pled that APC either knew of Employee Defendants' scheme or breached any duty toward the Plaintiffs. The mere structure of the plans does not make knowledge of any wrongdoing by the Employee Defendants sufficiently plausible. Furthermore, Plaintiffs have failed to allege sufficient facts that make it plausible that Defendant John Crosby's removal as trustee of the Tribal 401(k) on July 1, 2014, even constituted a delay, much less evinces any knowledge of unlawful activities. Accordingly, APC's motion to dismiss the aiding and abetting claim is GRANTED. Because the aiding and abetting claim suffers from the same defects as the negligence claim against APC, the dismissal is with prejudice.

### 3. Moore

Plaintiffs allege that Moore was involved in purposefully delaying the removal of John Crosby as trustee of the Tribal 401(k). Id. ¶ 264. As described above, the only

plausible inferences from the facts alleged is the opposite conclusion of what Plaintiffs claim. Plaintiffs also alleged that the structure of the Tribal Retirement Plans indicates that Moore knew Employee Defendants were misappropriating the Tribe's funds. TAC ¶¶ 263–64, ECF No. 212. Just as these claims fail to state a claim against APC, so too do they fail to state a claim against Moore.

Thus, Moore's motion to dismiss the aiding and abetting claim against it is GRANTED. Because it suffers from the same defects as the negligence claim made against Moore, the dismissal is with prejudice.

### D.     Breach of Contract

Plaintiffs' breach of contract claim against Umpqua Defendants is predicated on the same duty of inquiry as Plaintiffs' negligence claim. Therefore, for the reasons already articulated, the breach of contract claim against the Umpqua Defendants is DISMISSED with prejudice.

### E.     Restitution (Quasi-Contract)

> [I]n California, there is not a standalone cause of action for "unjust enrichment," which is synonymous with "restitution." However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." The return of that benefit is the remedy "typically sought in a quasi-contract cause of action." When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution."

Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). Therefore, Plaintiffs' restitution claim is construed as a quasi-contract claim.

Plaintiffs base their quasi-contract claim on Moore allegedly providing assistance to the Employee Defendants, knowing their intent to unlawfully convert the Tribe's funds. Pls.' Opp. to MJOP 20:14–17. Plaintiffs allege that Moore received "generous fees" and "special additional consideration" in exchange for Moore's assistance. TAC ¶ 269, ECF No. 212. As discussed supra Section 2.c., Plaintiffs have failed to adequately allege that Moore knowingly assisted the Employee Defendants' misappropriation of the Tribe's

funds that would make the collection of fees for their services unjust. Accordingly, Plaintiffs have not adequately alleged any unjust enrichment that would support a quasi-contract claim against Moore and Plaintiff's claim in that regard is DISMISSED with prejudice.

### F.     Punitive Damages

APC argues there is some uncertainty as to whether dismissal of punitive damages is properly achieved via a Rule 12(b)(6) motion to dismiss or a Rule 12(f) motion to strike. APC MTD 17:19–20. The Ninth Circuit has held that a motion to dismiss is the correct vehicle due to the different standards on appeal between the two motions. See Whittleston, Inc. v. Handi-Craft Co., 618 F.3d 970, 973–74 (9th Cir. 2010) ("Rule 12(f) motions are reviewed for 'abuse of discretion,' whereas 12(b)(6) motions are reviewed de novo. . . . Applying different standards of review, when the district court's underlying action is the same, does not make sense." (citations omitted)). However, some district courts have continued to use 12(f) motions to strike claims for relief barred as a matter of law. See e.g., Garcia v. M-F Athletic Co., No. CIV. 11-2430 WBS GGH, 2012 WL 531008, at *4 n.4 (E.D. Cal. Feb. 17, 2012); I.R. v. City of Fresno, No. 1:12_cv-00558 AWI GSA, 2012 WL 3879974, at *2 (E.D. Cal. Sept. 6, 2012). Here, the motion is properly construed as brought under Rule 12(b)(6) because the sufficiency of the pleading is at issue.

As discussed supra Sections 2.b, 3.b., Plaintiffs have not sufficiently pled either a claim of negligence or a claim of aiding and abetting against APC. Accordingly, nor have Plaintiffs sufficiently pled that APC acted with "oppression, fraud, or malice" as required under California law and cannot recover punitive damages. Cal. Civ. Code § 3294(a). Thus, the prayer for punitive damages from APC is DISMISSED with prejudice.

///

///

///

**CONCLUSION**

For the stated reasons, Umpqua Defendants' Motion to Dismiss, ECF No. 228, is GRANTED with prejudice as to Plaintiffs' common law negligence, breach of contract, and aiding and abetting claims. APC's Motion to Dismiss, ECF No. 269, is GRANTED with prejudice as to Plaintiffs' common law negligence claim, aiding and abetting claim, and punitive damages prayer. Moore's Motion for Judgment on the Pleadings, ECF No. 275, is GRANTED with prejudice as to Plaintiffs' common law negligence, aiding and abetting, and restitution/quasi-contract claims.

IT IS SO ORDERED.

Dated: October 18, 2016

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE