UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASKENTA BAND OF NOMLAKI INDIANS; and PASKENTA ENTERPRISES CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>INES CROSBY; et al.,<br><br>Defendants. | No.  2:15-cv-00538-MCE-CMK<br><br>**MEMORANDUM AND ORDER** |

On June 29, 2015, Plaintiffs Paskenta Band of Nomlaki Indians and Paskenta Enterprises Corp. (collectively, the "Tribe") moved for a preliminary injunction to freeze assets belonging to four Defendants:  John Crosby, Ines Crosby, Leslie Lohse, and Larry Lohse (collectively, the "RICO Defendants").  ECF No. 72.  The Court denied the motion, finding that Plaintiffs failed to provide sufficient evidence "that each individual is likely to dissipate assets or put them beyond the reach of the Court."  Mem. & Order, ECF No. 102, at 2–3. Plaintiffs appealed, and the Ninth Circuit vacated the order and remanded.  U.S.C.A. Mem., ECF No. 343.

The Ninth Circuit directed this Court "to explain, on an individualized basis, why the evidence does or does not show a likelihood of dissipation."  U.S.C.A. Mem., at 3–4; see also Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009) ("A party seeking an asset freeze must

show a likelihood of dissipation of the claimed assets . . . ."). This is because, "to enable meaningful appellate review, a district court must set forth findings of facts and conclusions of law supporting its order granting or denying a preliminary injunction." U.S.C.A. Mem., at 3. This Order, therefore, sets out the denial of a preliminary injunction in more detail.

Plaintiffs have also filed a Request for an Evidentiary Hearing. ECF No. 345. The Court also DENIES Plaintiffs' Request for an Evidentiary Hearing. As detailed below, Plaintiffs rely primarily on the unpersuasive theory that mere past fraud and theft is sufficient to show a likelihood of future dissipation of assets, indicating that an evidentiary hearing would not be useful.[1]

## DISCUSSION

To justify an injunction, a plaintiff "must establish that irreparable harm is likely, not just possible." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "Typically, monetary harm alone does not constitute irreparable harm . . . . Therefore, a party seeking an asset freeze has the additional burden of showing 'a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted.'" Fid. Nat'l Title Ins. Co. v. Castle, No. C-11-00896-SI, 2011 WL 5882878, at *5–6 (N.D. Cal. Nov. 23, 2011) (citation omitted). "Courts have construed this standard narrowly, only exercising their . . . authority . . . where there is considerable evidence of likely dissipation." Allstate Ins. Co. v. Baglioni, No. CV-11-06704-DDP-VBKX, 2011 WL 5402487, at *2 (C.D. Cal. Nov. 8, 2011).

In Plaintiffs' motion, they set out extensive evidence that the RICO Defendants committed fraud and stole tribal funds. Plaintiffs' evidence is presented to show that RICO Defendants (1) wrote checks to each other from Plaintiffs' bank accounts, Pls.' Mem. of P & A in Supp. of Prelim. Inj., ECF No.72-20, at 10–11, 12–13; (2) withdrew

---

[1] The Court also notes that a criminal indictment has been filed against Ines Crosby, John Crosby, and Leslie Lohse and that they have filed a Motion to Stay, set for hearing on February 23, 2017. ECF No. 351.

1 cashier's checks and cash from Plaintiffs' bank accounts to purchase a "large luxury
2 home," id. at 11; (3) used Defendants' bank accounts to pay off personal credit card bills,
3 id. at 13–14; (4) appropriated tribal funds by transferring them between various bank
4 accounts and then withdrawing the funds, id. at 14–15; (5) wrote checks to cash from
5 tribal back accounts, id. at 15–16; and (6) liquidated retirement accounts once their
6 misappropriations were discovered, id. at 18–19.  None of this evidence, however,
7 shows a likelihood of future dissipation of assets, only that the RICO Defendants
8 misappropriated tribal assets.

9 Plaintiffs claim that "where a defendant has demonstrated a pattern of theft, fraud,
10 and subsequent attempts to evade liability," there is a likelihood of dissipation of the
11 misappropriated assets.  Mem. of P & A in Supp. of Prelim. Inj., at 6–7.  However, the
12 cases cited by Plaintiffs do not stand for that proposition.

13 For example, in In re Focus Media Inc., 387 F.3d 1077 (9th Cir. 2004), the Ninth
14 Circuit addressed the likelihood of dissipation of funds in a bankruptcy case.  Focus
15 Media Inc., the subject of the bankruptcy, held $3 million in assets, but "'[b]y the time
16 [the trustee] got there, there was slightly over a million dollars' left."  Id. at 1086 (first
17 alteration in original).  Thus, there was direct evidence that Focus Media was dissipating
18 its funds and placing them beyond the reach of the court.

19 Connecticut General Life Insurance Co. v. New Images of Beverly Hills, 321 F.3d
20 878 (9th Cir. 2003) is similarly inapposite.  In that case, the defendant attempted to
21 shield his assets from the court by purchasing a home in his son's name (a non-party)
22 and settling a divorce that placed "all the family's significant assets with" the defendant's
23 wife (at that time, a non-party).  Id. at 880.  Accordingly, there was significant evidence
24 that defendants had attempted to shield their assets from the court, justifying an asset
25 freeze.  To the extent Connecticut General supports the proposition that a "history of
26 fraudulent intra-family transfers" shows a likelihood that a defendant will attempt to
27 ///
28 dissipate assets, id. at 881, it only does so when those transfers are structured to put

assets out of the reach of the court.

The strongest case cited by Plaintiffs that mere fraud and theft of assets is itself sufficient to show a likelihood of dissipation of assets is Johnson v. Couturier, 572 F.3d 1067 (9th Cir. 2009).  In that case, the Ninth Circuit found the district court did not abuse its discretion for issuing an asset freeze merely based on the defendant having "convinced his fellow directors and trustees to consent to diverting nearly $35 million from [an employee stock ownership plan] into his personal bank account." Id. at 1085.  The court found that "[s]uch an individual is presumably more than capable of placing assets in his personal possession beyond the reach of a judgment." Id.

Couturier, however, does not compel this Court to issue an injunction that freezes the RICO Defendants' assets.  The issuance of a preliminary injunction falls within the sound discretion of the district court, see id. at 1078 ("We review the grant or denial of a preliminary injunction for abuse of discretion."), and this Court declines to make the inference made in Couturier.  That the district court in Couturier did not abuse its discretion by making an inference similar to the one Plaintiffs ask this Court to make does not render such an inference necessary.  The mere proclivity to and history of stealing funds does not demonstrate an ability to place assets beyond the reach of the Court.  The RICO Defendants' efforts were limited to withdrawing funds, writing checks, and liquidating accounts.[2]

The only evidence, therefore, that the RICO Defendants are likely to dissipate the funds is that John Crosby "expressed intent to transfer assets to the Philippines."  Mem. of P & A in Supp. of Prelim. Inj., at 23.  Plaintiffs also claim that a "link between a bank in Sudan and payments made from" one of Defendants' bank accounts shows John Crosby's intent to move assets overseas.  Plaintiffs' evidence on these two points,

---

[2] Plaintiffs' arguments regarding Defendant John Crosby's purchase of a house are unclear.  On the one hand, they seem to argue that the purchase of the house constitutes a prior instance of dissipating funds; i.e., stolen funds would be shielded from the court because they were converted into real property.  See Mem. of P & A in Supp. of Prelim. Inj., at 11.  On the other hand, they also moved to block John Crosby from selling the house, i.e., liquidating the funds and converting them into the form they were in when stolen.  Id. at 19–20.  Thus, the evidence regarding John Crosby's house purchase does not convince the Court that dissipation of funds is so likely that a general asset freeze is warranted.

however, is meager at best.

Plaintiffs claim that an email dated October 14, 2014 that states John Crosby was "in the Philippines looking to invest in different ventures." Id. Plaintiffs cite Exhibit R of the Declaration of Ambrosia Rico to be the email. Presumably they refer to the declaration found at ECF No. 72-1, and indeed that declaration states: "Attached hereto as Exhibit R is a true and correct copy of an email dated October 14, 2014 . . . ." However, the Exhibit R attached to that declaration is a bank statement, and no other attached exhibit resembles an email. Thus, Plaintiffs have provided no evidence that supports the claim that John Crosby is likely to move assets to the Philippines.

In support of the supposed connection with Sudan—which is only raised in a footnote—Plaintiffs cite the voluminous, 113-page Declaration of Stuart Gross found at ECF No. 72-8. It is wholly unclear what is contained in that declaration that supports a connection between the RICO Defendants and Sudan, and Plaintiffs provide no detail of even what this "link" is. Thus, Plaintiffs have provided no evidence that any of the RICO Defendants are likely to move assets to Sudan.

## CONCLUSION

Plaintiffs have provided insufficient evidence that the RICO Defendants are likely to dissipate assets or put them beyond the reach of the Court. Accordingly, they have not demonstrated they will likely suffer irreparable harm absent a preliminary injunction, and Plaintiffs' Motion for Preliminary Injunction, ECF No. 72, is DENIED.

IT IS SO ORDERED.

Dated: January 24, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE