UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PASKENTA BAND OF NOMLAKI INDIANS; and PASKENTA ENTERPRISES CORPORATION,

Plaintiffs,

v.

INES CROSBY; et al.,

Defendants.

No. 2:15-cv-00538-MCE-CMK

**MEMORANDUM AND ORDER**

On January 5, 2017, three of the Defendants in this action were indicted for conspiracy to embezzle or steal from a tribal organization, multiple substantive counts of embezzlement or theft from a tribal organization, and various counts of making false statements. United States v. Crosby, No. 2:17-cr-00006-MCE (E.D. Cal. Jan 5, 2017). The alleged conspiracy substantially overlaps with Plaintiffs' claims here under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. Defendants filed a Motion to Stay in this case, ECF No. 351, claiming that their Fifth Amendment rights would be undermined if this case was not stayed pending resolution of the criminal charges against them. For the reasons that follow, that Motion is GRANTED IN PART.[1] This action is stayed pending resolution of the parallel criminal

---
[1] Having determined that oral argument would not be of material assistance, the Court ordered the motion submitted on the briefs in accordance with Local Rule 230(g).

1

case, subject to limited exceptions for the resolution of motions currently pending before the Court.

**BACKGROUND**

Plaintiff Paskenta Band of Nomlaki Indians (the "Tribe") employed Ines Crosby, John Crosby, Leslie Lohse, and Larry Lohse in executive positions for more than a decade. Plaintiffs allege that Defendants used their positions to embezzle millions of dollars from the Tribe and its principal business entity, the Paskenta Enterprises Corporation ("PEC"). Plaintiffs allege the Defendants stole this money by, among other things, withdrawing large sums from Plaintiffs' bank accounts for their personal use and by having the Tribe invest in two unauthorized retirement plans for the Defendants' personal benefit. Plaintiffs allege the Employee Defendants kept their activities hidden from Plaintiffs by such means as harassment, intimidation, and cyber-attacks on the Tribe's computers. On January 5, 2017, three of the Defendants—Ines Crosby, John Crosby, and Leslie Lohse—were indicted for various crimes premised on the same alleged scheme of misappropriating the Tribe's funds.

**STANDARD**

While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution. Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989); Sec. & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980). The Ninth Circuit has held that "in the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324–25 (9th Cir. 1995) (quoting Dresser, 628 F.2d at 1374). Nevertheless, a court may decide in its

discretion to stay civil proceedings "when the interests of justice seem to require such action." Id. (quoting United States v. Kordel, 397 U.S. 1, 12 n.27 (1970)).

When deciding whether to stay civil proceedings, courts should consider "the particular circumstances and competing interests involved in the case." Id. (quoting Molinaro, 889 F.2d at 902). The Ninth Circuit has instructed the court to consider "the extent to which the defendant's Fifth Amendment rights are implicated." Id. (quoting Molinaro, 889 F.2d at 902).

Additionally, courts

> should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Id. at 324–25 (citing Molinaro, 889 F.2d at 903).

**DISCUSSION**

Defendants argue their Fifth Amendment rights are "undoubtedly implicated" in the civil case because "John Crosby, Ines Crosby, and Leslie Lohse were indicted for the exact same conduct as is alleged in the civil suit." Defs.' Mot. to Stay, at 6. Plaintiffs, for their part, "recognize certain factual similarities between the [c]ivil [a]ction and the [c]riminal [a]ction" and therefore "agree to stay the [c]ivil [a]ction subject to several limited carve-outs." Pls.' Opp'n to Mot. to Stay, at 1. That is, Plaintiffs do not oppose generally staying the civil case, but want to maintain the ability to pursue certain aspects of the civil case while the criminal case is pending. Plaintiffs would like the following matters to be exempt from any stay of the civil case:

///

3

(1) Completion of the briefing and hearing on Plaintiffs' Motion for Reconsideration of the Order Denying Plaintiffs' Motion for a Preliminary Injunction; (2) In the event that the Court does not grant Plaintiffs' Reconsideration motion, conduct any other briefing or discovery necessary should the Court of Appeals remand Plaintiffs' appeal of the Court's order Denying Preliminary Injunction; (3) Pursuit of discovery against the RICO Ringleaders regarding their income, financial information, and sizeable gifts, etc. to other during the relevant period; (4) Pursuit of discovery against the RICO Ringleaders into their disposition of moneys and assets taken from the Tribe; and (5) Certification for appeal of the Court's dismissal of Plaintiffs' claims against the Defendants in the civil action.

Id. at 1–2 (citations omitted). Defendants, in turn, object only to "carve-outs" (3) and (4), which would permit ongoing discovery. See Defs.' Reply, ECF No. 376, at 1–2. Given that the parties are in general accord that a stay should issue and the scope of stay, the Court only address the two contested proposed carve-outs.[2]

As an initial matter, the Court must determine whether a stay is appropriate in the first place, before turning to exceptions to that stay. Due to the overlap between the allegations in both the civil action and the indictment, the Court finds that proceeding in the civil action would likely implicate Defendants' Fifth Amendment rights in a significant manner. Indeed, "[t]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." In re Zinnel, No. 2:12-cv-00249-MCE, 2013 WL 1284339, at *3 (E.D. Cal. Mar. 28, 2013) (citing Dresser, 628 F.2d at 1375–76). The heart of the allegations in the civil action is that Defendants defrauded the Tribe, misappropriating millions of the Tribe's dollars. The indictment concerns portions of the same alleged scheme, and specific allegations often overlap. Compare, e.g., Third Amended Complaint ("TAC"), ECF No. 212, ¶ 454, with Indictment, Crosby, No. 2:17-cr-00006-MCE, ECF No. 1, ¶¶ 22–24, 27, 29 (both

---

[2] The Court notes that since the filing of the instant Motion and the related moving papers, the Court entered judgment pursuant to Rule 54(b) on the claims referenced in Plaintiffs' fifth carve-out. ECF No. 378. The dismissed defendants have moved for attorney fees, and those motions are set for hearing on May 18, 2017. ECF Nos. 382, 384, 388, 413. The Court construes these motions for attorney fees as falling within the ambit of Plaintiff's fifth carve-out.

4

alleging that Defendants took identical amounts on the same days: $74,826.50 on May 24, 2012; $119,131.00 on June 7, 2012; $81,558 on July 20, 2012; $34,100.55 on August 2, 2012; and $39,691.00 on September 14, 2012). Furthermore, the TAC's allegations sweep broader than the indictment, such that evidence obtained in pursuance of the civil action "might be used to prove that [Defendants] intended to commit the fraudulent acts alleged in the indictment, or had a plan to conceal fraudulently obtained assets." In re SK Foods, L.P., Civ. No. S-10-1492 LKK, 2010 WL 5136189, at *7 (E.D. Cal. Dec. 10, 2010).

      Aside from the implication of Defendants' Fifth Amendment rights, the factors identified in Keating also counsel a stay. First, judicial resources will be conserved by staying that case—after resolution of the criminal case, "common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination." Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc., No. CIV. 2:09-cv-0954 FCD EFB, 2009 WL 2136989, at *4 (E.D. Cal. July 15, 2009) (quoting Jones v. Conte, No. C 045312S1, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005)). Second, there is no indication that a stay would affect the interest of non-parties or be contrary to the public interest. Finally, as analyzed in more depth below concerning Plaintiffs' proposed carve-outs, Plaintiffs have not shown that they would suffer prejudice absent a stay that would outweigh the burden on Defendants' Fifth Amendment rights.

      Turning now to the contested carve-outs to the stay, Plaintiffs' proposed exceptions for continued discovery are so large that they would directly undermine the main purpose of staying the civil proceeding—protection of Defendants' Fifth Amendment rights. Any discovery "regarding [Defendants'] income, financial information, and sizeable gifts, etc. to others" or concerning the "disposition of moneys and assets taken from the Tribe" directly implicates the Fifth Amendment concerns identified above. If such a broad exception for continued discovery was implemented, it is not clear why a stay should issue at all.

Plaintiffs desire these carve-outs in order to "address very real prejudices Plaintiffs will suffer should the Court grant the . . . stay . . . , absent any freeze on their assets." Pls.' Opp'n, at 2. In essence, Plaintiffs attempt to re-litigate the denial of the preliminary injunction through their opposition to the Motion to Stay. First, this is unnecessary as Plaintiffs have already filed a motion for reconsideration,[3] which will be unaffected by the stay. Briefing has already been completed by both parties, and the motion is submitted. Second, Plaintiffs' proposed discovery carve-out seems to be designed to keep discovery into Defendants' finances open long enough to obtain sufficient evidence to freeze their assets. The Court will not tailor a stay to be so results-oriented.

Despite overlap between the allegations against Defendants—misappropriation of funds—and the discovery that Plaintiffs want to exempt from the stay—where those allegedly misappropriated funds are—Plaintiffs claim that allowing such discovery would not implicate Defendants' Fifth Amendment rights. This is because they "are not seeking liability[-]focused information and document[s]" but rather "only . . . evidence of purchases sales, transactions and other events where the RICO Ringleaders spent or used Tribal moneys." Pls.' Opp'n, at 10. This is, to say the least, a perplexing argument. It is beyond the Court how it would be possible to distinguish between which information is liability-focused and which is not. At the heart of the matter is how Defendants used Plaintiffs' funds while they held leadership positions within the Tribe. The information Plaintiffs seek—Defendants' finances and financial transactions—squarely addresses liability for the alleged misuse of Plaintiffs' funds.

///

---

[3] Plaintiffs originally filed a Motion for Preliminary Injunction requesting an asset freeze on June 29, 2015, ECF No. 72, which was denied, ECF No. 102. That denial was appealed to the Ninth Circuit, which reversed and remanded "for further findings of fact and conclusions of law to permit meaningful review" and directed the Court to "explain, on an individualized basis, why the evidence does or does not show a likelihood of dissipation" of Defendants' assets. USCA Mem., ECF No. 343, at 3–4. The Court did so, laying out in more detail the basis for its denial of preliminary injunction. ECF No. 360. Plaintiffs have both moved for reconsideration of that new order, ECF No. 366, and appealed to the Ninth Circuit, ECF No. 365.

**CONCLUSION**

For the reasons above, Defendants' Motion to Stay, ECF No. 351, is GRANTED, and this action IS HEREBY STAYED pending the resolution of criminal proceedings against Defendants, subject to three exceptions: (1) the pending Motion for Reconsideration, ECF No. 366; (2) any briefing necessary in light of the disposition of Plaintiffs' appeal of the denial of a preliminary injunction; and (3) the pending Motions for Attorney Fees, ECF Nos. 382, 384, 388. Not later than ninety (90) days following the date this Memorandum and Order is electronically filed, and every ninety days thereafter until the stay is lifted, the parties are directed to file a Joint Status Report advising the Court as to the status of the criminal action.

IT IS SO ORDERED.

Dated: April 19, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE