UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASKENTA BAND OF NOMLAKI INDIANS; and PASKENTA ENTERPRISES CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>INES CROSBY; et al.,<br><br>Defendants. | No. 2:15-cv-00538-MCE-CMK<br><br>**MEMORANDUM AND ORDER** |

Before the Court is Plaintiffs' Motion for Reconsideration, ECF No. 366, in which they seek to obtain a preliminary injunction that the Court previously declined to issue. For the reasons that follow, the motion is DENIED.

**BACKGROUND**

On June 29, 2015, Plaintiffs Paskenta Band of Nomlaki Indians and Paskenta Enterprises Corp. (collectively, the "Tribe") moved for a preliminary injunction to freeze assets belonging to four Defendants: John Crosby, Ines Crosby, Leslie Lohse, and Larry Lohse (collectively, the "RICO Defendants"). ECF No. 72. The Court denied the motion, finding that Plaintiffs failed to provide sufficient evidence "that each individual is

1

likely to dissipate assets or put them beyond the reach of the Court." Mem. & Order, ECF No. 102, at 2–3. Plaintiffs appealed, and the Ninth Circuit vacated and remanded the order, directing this Court "to explain, on an individualized basis, why the evidence does or does not show a likelihood of dissipation" in order "to permit meaningful review" of the Court's decision. U.S.C.A. Mem., ECF No. 343, at 3–4. The Court subsequently set forth the findings of facts and conclusions of law that supported its decision to deny the asset freeze in a Memorandum and Order dated January 24, 2017. ECF No. 360. Plaintiffs' Motion for Reconsideration addresses the Memorandum and Order issued in response to the Ninth Circuit's opinion.

**STANDARD**

It is a well-established maxim within our jurisprudence that a court should not revisit its own decisions unless extraordinary circumstances show that its prior decision was wrong. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). Reconsideration may be appropriate in one of three situations: (1) newly discovered evidence is presented; (2) the court has committed clear error or issued an initial decision that was manifestly unjust; or (3) intervening change in controlling law is presented. Turner v. Burlington N. Santa Fe R.R., 338 F.3d 1058, 1063 (9th Cir. 2003).

A motion for reconsideration should not be used to raise arguments or present evidence that could have reasonably been raised or presented earlier. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (citing Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)). In order to succeed, a party making a motion for reconsideration must "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Pritchen v. McEwen, No. 1:10-cv-02008-JLT HC, 2011 WL 2115647, at *1 (E.D. Cal. May 27, 2011) (citing Kern-Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 656 (E.D. Cal. 1986) aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987)).

Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for relief. Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981); see also Sheets v. Terhune, No. 1:08-cv-1056-SRB, 2010 WL 1287078, at *1 (E.D. Cal. Mar. 30, 2010) ("Such motions should not be used for the purpose of asking a court 'to rethink what the court had already thought through—rightly or wrongly.'" (citation omitted)). Motions for reconsideration are therefore not intended to "give an unhappy litigant one additional chance to sway the judge." Kilgore v. Colvin, No. 2:12-cv-1792-CKD, 2013 WL 5425313, at *1 (E.D. Cal. Sept. 27, 2013) (quoting Frito-Lay of P.R., Inc. v. Canas, 92 F.R.D. 384, 390 (D.P.R. 1981)). Local Rule 230(j) similarly requires a party seeking reconsideration to demonstrate "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion," and "why the facts or circumstances were not shown at the time of the prior motion."

## ANALYSIS

To justify an injunction, a plaintiff "must establish that irreparable harm is likely, not just possible." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "Typically, monetary harm alone does not constitute irreparable harm . . . . Therefore, a party seeking an asset freeze has the additional burden of showing 'a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted.'" Fid. Nat'l Title Ins. Co. v. Castle, No. C-11-00896-SI, 2011 WL 5882878, at *5–6 (N.D. Cal. Nov. 23, 2011) (citation omitted). "Courts have construed this standard narrowly, only exercising their . . . authority . . . where there is considerable evidence of likely dissipation." Allstate Ins. Co. v. Baglioni, No. CV-11-06704-DDP-VBKX, 2011 WL 5402487, at *2 (C.D. Cal. Nov. 8, 2011).

///

In its prior order denying a preliminary injunction that would freeze the RICO Defendants' assets, the Court found that the evidence put forth by Plaintiffs did not warrant the relief sought. Plaintiffs contend both that new evidence supports reconsideration and that the Court committed clear error in the prior order. See Mot. to Recons., at 11. The Court addresses each in turn.

### A. New Evidence

Plaintiffs claim new evidence demonstrates the following: (1) that Defendant Leslie Lohse requested and received a public defender in the parallel criminal case; (2) that the RICO Defendants refused "to provide any information or documents from which it could be determined how much of the money stolen from the Tribe still exists, as well as where it exists and in what form"; (3) that the RICO Defendants lied and provided false documents to the FBI and IRS; (4) that the RICO Defendants filed false tax returns; and (5) that John Crosby attempted to sell a car. Mot. for Recons., at 12–17. Furthermore, Plaintiffs claim that this new evidence supports imposing an asset freeze on the RICO Defendants.

Plaintiffs first argue that Leslie Lohse obtaining a public defender is "direct evidence" of the dissipation of assets because she and her husband claimed a total of $3,726,109 in income for the years 2010–2014. Id. at 12–13. To the contrary, this new evidence is mostly supposition, relying primarily on allegations contained in the indictment in the parallel criminal case. Furthermore, Plaintiffs provide no temporal context for these claims, lumping five years of reported income together, and do not provide any information about the relationship between Leslie Lohse's reported income and available assets. Leslie Lohse's income in 2014 does not indicate the amount of assets she had when this action was filed.[1] The Court finds this sparse evidence and

///

---

[1] Given that a preliminary injunction can issue only if "the balance of equities tips in [the movant's] favor," Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)), the Court notes that, even crediting Plaintiffs' arguments, the value of an asset freeze is questionable at best. If the Lohses are indeed now indigent, what value is an injunction freezing their assets?

Plaintiffs' conclusory inferences insufficient to satisfy Plaintiffs' burden of providing "considerable evidence of likely dissipation." Baglioni, 2011 WL 5402487, at *2.

Second, the Court turns to the evidence that purports to show the RICO Defendants have not cooperated in providing information about the assets they allegedly stole. Plaintiffs claim "Defendants have consistently refused to provide any information or documents from which it could be determined how much of the money stolen from the Tribe still exists, as well as where it exists and in what form." Id. at 15. In support, they cite generally to a 24-paragraph declaration and 154 pages of exhibits. See id.; Klein Decl., ECF No. 3. Plaintiffs do not explain what exactly this evidence shows. See Mot. for Recons., at 14–15. "District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce." Nw. Nat'l Ins. Co. v. Baltes, 15 F.3d 660, 662 (7th Cir. 1994). Plaintiffs' broad, context-less evidence is insufficient to warrant reconsideration.

The new evidence Plaintiffs provide that the RICO Defendants gave falsified documents and lied to the FBI and IRS as well as filed false tax returns is similarly insufficient. Plaintiffs provide only the indictment in the parallel criminal case as evidence. See Mot. to Recons., at 15–16. Generally, an indictment is not evidence of the crimes alleged, and to the extent it can be considered in determining a likelihood of Defendants' future actions, see, e.g., Brinegar v. United States, 338 U.S. 160, 173 (1949) (allowing testimony concerning a prior arrest and indictment in determining probable cause), the indictment alone—or coupled with the other "new evidence"—is not sufficient to warrant reconsideration of the Court's prior order.

Finally, Plaintiffs present "new" evidence that John Crosby attempted to sell a car. See Mot. for Recons., at 16–17. Plaintiffs, however, already presented this evidence to the Court in their original motion for a preliminary injunction, see Reply, ECF No. 91, at 17–18, and the Court already considered it in adjudicating the motion Plaintiffs now

///

move the Court to reconsider. Accordingly, it does not establish a basis for reconsideration.

### B. Clear Error

Plaintiffs next claim that the Court committed clear error by not considering the following evidence in its order dated January 24, 2017: (1) an email indicating John Crosby intended to move assets to the Philippines; (2) wire transfers made by John Crosby sent through Sudan; (3) John Crosby's attempt to sell his home; (4) that the RICO Defendants "absconded with the jet they had purchased with the Tribe's money"; (5) evidence that RICO Defendants liquidated their retirement accounts; (6) evidence of a cyber-attack on the Tribe's casino; and (7) other evidence that the RICO Defendants attempted to cover up their thefts. Mot. for Recons., at 17–20.

First, the Court addresses Plaintiffs' contention that the Court committed clear error by insufficiently considering evidence that John Crosby intended to move assets overseas "as a result of citation errors in the briefing." Id. at 2. As the Court previously stated, the only allegations directly on point in Plaintiff's original Motion for Preliminary Injunction were those concerning John Crosby's supposed intention to move assets to the Philippines and John Crosby's supposed financial "link" to Sudan. The Court noted that the email Plaintiffs relied on as their sole evidence for the Philippines allegations did not appear where Plaintiffs claimed, and that in support of their Sudan allegations, Plaintiffs only cited generally to a "voluminous, 113-page [d]eclaration" without explanation. Mem. & Order, at 5.

In the instant motion, Plaintiffs claim they corrected their citation errors regarding the Philippines in the reply associated with their original motion, and thus it was clear error for the Court not to consider the provided evidence. Id. at 17. While it is true that Plaintiffs did provide a copy of the email as an exhibit to one of four declarations filed contemporaneously with that reply, see Purdy Decl., Ex. D, ECF No. 91-4, the reply itself did not reference that exhibit. Once again, the Court notes that "[d]istrict judges are not archaeologists." Baltes, 15 F.3d at 662. Regardless, one email stating that John Crosby

6

visited the Philippines and a statement from John Crosby that he did so to "explor[e] whether the Philippines would be a good location to create a service/call-center," J. Crosby Decl., ECF No. 87-6, ¶ 11, is insufficient to support the asset freeze Plaintiffs seek.

Turning to the evidence concerning Sudan, Plaintiffs similarly claim it was clear error for the Court to disregard evidence that was incorrectly cited due to "a clerical error." Mot. to Recons., at 18. Regardless of the propriety of insisting that this Court comb through over one hundred pages of evidence without focusing the Court's attention on the salient pieces of information, Plaintiffs' corrected citations are almost equally unhelpful. Plaintiffs' evidence consists of documents labeled "Incoming FED Message" that appear to be related to bank transfers, listing items such as "Amount" as well as "Sender" and "Receiver." See, e.g., Gross Decl., ECF No. 72-8, Ex. H, at 56. On reconsideration, Plaintiffs now draw the Court's attention to the following, found on the fifth page of each of these documents, under the section labeled "ERRORS:" "OFAC violation in Ogb: UNITY BANK - UNITY BANK BARIMAN AVE PO BOX 408 (NOW PART OF BANK OF KHARTOUM GROUP) (OWNERSHIP: BANK OF SUDAN; MINISTRY OF FINANCE) Source: US Treasury SDN List stop name: (UNITY BANK). Error<OFAC>." E.g., id. at 60. Plaintiffs claim this is "evidence . . . of [John] Crosby's movement of money . . . through Sudan." Mot. for Recons., at 18.[2]

Not only does John Crosby's name not appear anywhere on these documents, Plaintiffs provide no context for these documents aside from the conclusory statements in their briefs. Plaintiffs do not explain or provide evidence as to, for example, what "OFAC violation in Ogb" means, or how the apparent error messages are evidence of movement of money through Sudan. Even more perplexing, assuming that the documents do show what Plaintiffs claim, is Plaintiffs' failure to explain how moving

---

[2] The Court notes that in the prior Motion for Preliminary Injunction, Plaintiffs only referenced this evidence in a footnote, and vaguely described it as a "link between a bank in Sudan and payments made from a PEC account at Cornerstone Bank from which Mr. Crosby regularly stole money." Mot. for Prelim. Inj, at 23 n.10.

7

assets from one U.S.-based entity to another U.S.-based entity through Sudan in 2011 is evidence that RICO Defendants are likely to move assets overseas. Accordingly, these documents, now properly cited, do not support a finding that it is likely that any of the RICO Defendants will dissipate assets.

Plaintiffs next claim clear error for "erroneously underst[anding] Plaintiffs' argument to concern the purchase of [John Crosby's house], when in fact, it concerned [John] Crosby's attempt to sell the property." Mot. for Recons., at 18. Plaintiffs also claim clear error for the Court to not address evidence that the RICO Defendants "absconded with the jet they had purchased with the Tribe's money." Id. at 19. Once again, Plaintiffs only offer conclusory arguments that these actions constitute evidence that it is likely the RICO Defendants will dissipate assets. Furthermore, Plaintiffs' evidence shows that John Crosby did not sell the property, Mem. of P & A in Supp. of Prelim. Inj., ECF No. 72-10, at 20, and that Plaintiffs have possession of the jet, id. at 22.[3] Similarly, Plaintiffs' evidence shows John Crosby did not sell his car. See Reply, ECF No. 91, at 17–18. To the extent these actions bear on the likelihood that the RICO Defendants will dissipate assets, the Court finds them insufficient to warrant the asset freeze Plaintiffs seek.

Finally, Plaintiffs fault the Court for not considering RICO Defendants' admissions that they liquidated their retirement accounts, that they launched a cyber-attack on the Tribe, and the RICO Defendants' "extraordinary efforts to obstruct the Tribe's investigation into allegations of their financial misconduct." Mot. for Recons., at 19–20. Plaintiffs claim this is the sort of direct evidence of dissipation that was "independent of that probative of [RICO Defendants'] fraud and theft." Id. at 19. Plaintiffs do not explain, however, how liquidation of the retirement accounts, i.e. removing the funds in those accounts from the Tribe's control, is indicative of anything other than the alleged theft.

---

[3] Plaintiffs claim that United States ex rel. Rahman v. Oncology Assocs., 198 F.3d 489 (4th Cir.1999), stands for the proposition that evidence of an attempted sale "is squarely the type of evidence that supports a likelihood of dissipation." Mot. for Recons., at 18. Plaintiff fails to explain its reading of Rahman, and the Court notes that Defendants in that case were shown to have not only been successful in selling assets, but also had transferred money overseas. See Rahman, 198 F.3d at 493.

Nor do they explain how efforts to impede discovery or investigation of their alleged theft and fraud are indicative of a likelihood to put assets beyond the reach of the Court. Accordingly, the Court did not commit clear error in evaluating Plaintiffs' arguments in their original motion. See Mem. & Order, ECF No. 360, at 4 (finding that the only allegations relevant to Plaintiffs' claim that the RICO Defendants are likely to dissipate funds were those concerning the Philippines and Sudan); Salinas v. City of San Jose, No. 5:09-cv-04410 EJD, 2011 WL 3739555, at *3 (N.D. Cal. Aug. 23, 2011) ("[Defendant] seems to take issue with the fact the court did not address every point or every case cited by [Defendant]. But this does not equate to a failure to consider dispositive arguments, especially when the Order appears complete on its face.").

## CONCLUSION

For the reasons given, Plaintiffs' Motion for Reconsideration, ECF No. 366, is DENIED. Plaintiffs have not provided new evidence that warrants reconsideration, nor shown that the Court committed clear error in its prior adjudication of Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.

Dated: May 10, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE