1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   PASKENTA BAND OF NOMLAKI              No.  2:15-cv-00538-MCE-CMK
     INDIANS; and PASKENTA
12   ENTERPRISES CORPORATION,

13                 Plaintiffs,            **MEMORANDUM AND ORDER**

14          v.

15   INES CROSBY; et al.,

16                 Defendants.

17

18          On February 21, 2017, the Court entered final judgment in favor of eight

19   Defendants in this suit after all claims against them had been dismissed pursuant to

20   various prior motions.  <u>See</u> Mem. & Order, ECF No. 378; Final J., ECF No. 379.

21   Umpqua Bank; Umpqua Holdings Corp. (collectively, "Umpqua"); Cornerstone

22   Community Bank; and Associated Pension Consultants, Inc. ("APC") subsequently filed

23   motions for attorney's fees.  ECF Nos. 382, 384, 388.  These Defendants, as well as

24   Garth Moore and Garth Moore Insurance and Financial Services, Inc. (collectively,

25   "Moore"), also filed bills of costs, ECF No. 383, 385–87, to which Plaintiffs Paskenta

26   Band of Nomlaki Indians ("the Tribe") and Paskenta Enterprises Corp. ("PEC") filed

27   objections, ECF No. 403.  For the reasons that follow, the Umpqua Defendants' and

28   ///

                                            1

1  APC's motions for attorney's fees are DENIED, and Cornerstone's motion is GRANTED.

2  Furthermore, the Court OVERRULES Plaintiffs' objections to the bills of costs.[1]

3

4  **BACKGROUND**

5

6  As this Court has recounted in prior orders, Plaintiffs allege that Ines Crosby,

7  John Crosby, Leslie Lohse, and Larry Lohse (collectively, the "Employee Defendants")—

8  all employed by the Tribe in executive positions for more than a decade—used their

9  positions to embezzle millions of dollars from the Tribe and its principal business entity,

10  PEC.  According to Plaintiffs, the Employee Defendants stole these funds from Plaintiffs'

11  bank accounts—including accounts at Umpqua Bank and Cornerstone Community

12  Bank—by withdrawing large sums for their personal use.  Plaintiffs further allege that the

13  Employee Defendants caused the Tribe to invest in two unauthorized retirement plans

14  for the Employee Defendants' personal benefit:  a defined benefit plan and a 401(k)

15  (collectively, "Tribal Retirement Plans").  The Employee Defendants allegedly kept their

16  activities hidden from Plaintiffs by various means including harassment, intimidation, and

17  cyber-attacks on the Tribe's computers.

18  Plaintiffs go on to assert that Cornerstone, Umpqua, APC, and Moore knowingly

19  assisted the Employee Defendants in aspects of their scheme.  They contend that

20  Umpqua and Cornerstone controlled banks where Plaintiffs maintained accounts and,

21  despite knowing the Employee Defendants were withdrawing money from these

22  accounts for their personal benefit, permitted the Employee Defendants to continue

23  making withdrawals, and failed to notify Plaintiffs of the Employee Defendants' actions.

24  According to Plaintiffs, APC and Moore—as the third-party administrator for the Tribal

25  Retirement Plans and financial advisor, respectively—assisted the Employee

26  Defendants in setting up and administering the unauthorized Tribal Retirement Plans.

27  _____

[1] Because oral argument would not have been of material assistance, the Court ordered this
28  matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

1    On October 19, 2016, the Court dismissed all the claims against Umpqua and

2    APC with prejudice for failure to state a claim pursuant to Federal Rule of Civil

3    Procedure 12(b)(6).  ECF No. 299.  In that same Memorandum and Order, the Court

4    also granted Moore's Motion for Judgment on the Pleadings pursuant to Rule 12(c),

5    resolving all claims against it.  Id.  On January 24, 2017, the Court granted the

6    Cornerstone Defendants' Motions for Summary Judgment, similarly resolving all claims

7    against them.  ECF No. 358.

8

9                                    **ANALYSIS**

10

11       **A.    Motions for Attorney's Fees**

12            **1.    APC**

13       APC claims that it is entitled to attorney's fees based on the contract APC and the

14   Tribe entered into when APC was hired to design, structure, and administer the Tribal

15   Retirement Plans.  Mem. of P. & A. in Supp. of APC's Mot. for Attorney's Fees ("APC's

16   Mot."), ECF No. 389, at 2.  The relevant language in that contract states:

17           Employer and Trustee agree to indemnify and hold APC
             harmless from and against all claims, losses, damages,
18           liabilities, costs, and other expenses (including all attorneys'
             fees, collection fees or court costs) arising from or in
19           connection with the operation of the Plan or the rendering of
             plan-related services by Employer, Plan Administrator, or any
20           third party.  This indemnification does not include claims,
             losses, damages, liabilities, costs, and expenses attributable
21           solely to any gross negligence or willful misconduct by APC
             in the performance of services under this Agreement.
22

23   Decl. of Marc Roberts, ECF No. 391, Ex. 1, at 7.

24       In its moving papers, APC appears to give two different, conflicting interpretations

25   of this language.  In its Memorandum of Points and Authorities in support of its motion,

26   APC claims that the agreement provides attorney's fees for all claims made "by the

27   Employer (i.e., the Tribe), Plan Administrator (i.e., the Tribe), or third parties" against

28   APC.  APC's Mot., at 5.  However, in its Reply, APC claims instead that the

                                         3

1    indemnification clause identifies two separate instances in which it is triggered:  (1) when

2    claims "aris[e] from . . . the operation of the Plan," or (2) when claims "aris[e] from 'the

3    rendering of plan-related services by Employer, Plan Administrator or any third party.'"

4    See APC's Reply, ECF No. 420, at 3.

5          Plaintiffs advance yet a third reading of the contract.  They read the provision to

6    indemnify APC from liability only when claims arise from actions taken "by Employer,

7    Plan Administrator or any third party."  See Pls.' Opp'n to APC's Mot., ECF No. 416, at 4.

8    That is, they read the provision to indemnify APC for actions taken by anyone beside

9    APC.  They bolster this interpretation by pointing to the specific carve out for "willful

10   conduct by APC."  See id. at 5.  Accordingly, they argue that the attorney's fees clause

11   does not apply to this action because APC's actions were the basis of its alleged liability.

12   See id.

13         The Court agrees that Plaintiffs' reading of the contract is the most natural one.  It

14   makes little sense to artificially sever the phrase "by the Employer, Plan Administrator or

15   any third party" from the rest of the relevant sentence as APC urges.  Plaintiffs' reading

16   also more closely tracks standard indemnification provisions.  At the very least, the

17   contract is ambiguous, and under California law, ambiguities are "resolved against the

18   drafter" of the contract.  Winters v. Costco Wholesale Corp., 49 F.3d 550, 554 (9th Cir.

19   1995) (quoting Kunin v. Benefit Tr. Life Ins. Co., 910 F.2d 534, 539 (9th Cir. 1990)).  As

20   APC drafted the contract at issue, this rule also counsels adopting the narrower reading

21   advocated by Plaintiffs.  Accordingly, APC's motion is DENIED.[2]

22              **2.    Umpqua**

23         Similar to APC, Umpqua claims it is entitled to attorney's fees based on the

24   contract defining its relationship with Plaintiffs vis-à-vis the bank accounts from which the

25   Employee Defendants allegedly stole money.  Umpqua's alleged conduct concerning

26   _____

27   [2] Plaintiffs filed an Ex Parte Motion to Strike evidence provided in APC's Reply.  ECF No. 423.
     That evidence consisted of billing records supporting the amount of attorney's fees sought by APC.  See
     Decl. of William A. Muñoz, ECF No. 420-1, Ex. A.  Because the APC is not entitled to attorney's fees, the
28   Court does not address the reasonableness of the fees sought and Plaintiffs' ex parte motion is DENIED
     as moot.

1  these accounts formed the basis of Plaintiffs' claims against it.  The relevant contract

2  language, found under the heading "Liability for Overdrafts," states:

> You will also be liable for our costs to collect the deficit
> [resulting from an overdraft] as well as for our reasonable
> attorney's fees, to the extent permitted by law, whether
> incurred as a result of collection or in any other dispute
> involving your account including, but not limited to, disputes
> between you and another joint owner; you and an authorized
> signer or similar party; or a third party claiming an interest in
> your account.

8  Decl. of Shirley Schrumpf, ECF No. 382-2, Ex. E, at 1.  Umpqua relies on the language,

9  "any other dispute," to argue that the contract is broad and intended to encompass any

10  dispute concerning the accounts.  See Umpqua's Mot. for Attorney's Fees ("Umpqua's

11  Mot."), at 6.  Plaintiffs, conversely, argue that the clause must be read in context, and

12  that the "any other dispute" language's location in the contract shows that it only applies

13  to overdrafts.  See Pls.' Opp'n to Umpqua's Mot., ECF No. 417, at 6.

14      The Court again finds Plaintiffs' reading to be the correct one.  It is incongruous to

15  place a broad fee-shifting clause in a section specifically about overdrafts and buried in

16  the middle of a sentence that specifically addresses overdrafts.  Instead, as one would

17  expect in a section labeled "Liability for Overdrafts," the sentence at issue addresses

18  liability for overdrafts.  The contract states that Plaintiffs are responsible for shortages

19  ("Each of you also agrees to be jointly and severally (individually) liable for any account

20  shortage resulting from fees or overdrafts . . . ."), and that Plaintiffs are also liable for the

21  costs to collect those shortages ("You will also be liable for our costs to collect the

22  deficit.").  It includes attorney's fees among those potential costs, and then goes on to

23  describe potential disputes that might be attendant to any deficits.  Read in context, the

24  contract envisions, for example, "disputes between you and another joint owner" that

25  arise from a shortage.  The Court can imagine, for example, joint owner A causing an

26  overdraft and the bank attempting to recover that shortage from joint owner B, who then

27  claims A had no right to make the withdrawal that caused the overdraft in the first place.

28  The bank, however, did not limit shortage-related disputes to specifically enumerated

1   ones, and instead the contract provides that Plaintiffs were liable for costs associated

2   with "any other dispute involving [Plaintiffs'] account."  This language, however, does not

3   untether itself from the context in which it is written.

4        At the very least, the contract is ambiguous as to whether it applies only to

5   disputes associated with account shortages.  And as noted above, such ambiguities are

6   "resolved against the drafter" of the contract.  Winters, 49 F.3d at 554 (9th Cir. 1995).

7   Accordingly, the Court finds the attorney's fee provision only applies to attorney's fees

8   incurred in recovering account shortages and related disputes.

9        Umpqua also contends California Civil Code § 1717(a) requires that the attorney

10  fee clause be applied to the entire contract, regardless of whether the contract itself

11  limits its applicability to specific types of actions.  See Umpqua's Reply, ECF No. 419, at

12  4–5.  "[S]ection 1717 makes an attorney fee provision reciprocal even if it would

13  otherwise be unilateral either by its terms or in its effect."  Brown Bark III, L.P. v. Haver,

14  219 Cal. App. 4th 809, 818 (2013).  Section 1717(a) also states that such attorney's fee

15  provisions "shall be construed as applying to the entire contract."  Cal. Civ. Code

16  § 1717(a).  Umpqua relies on this language to argue that the attorney's fee provision

17  applies to this action, regardless of any language restricting it to certain types of

18  actions.[3]

19       However, § 1717 (a) only applies to provisions that provide "attorney's fees and

20  costs, which are incurred to enforce the contract."  Cal. Civ. Code § 1717(a); see also

21  Myers Bldg. Indus., Ltd. v. Interface Tech., Inc., 13 Cal. App. 4th 949, 968 (1993).  The

22  provision at issue here, however, only applies to attorney's fees associated with the

23  recovery of account deficits and attendant disputes, not in actions for breach of the

24  contract.  Thus, § 1717(a) has no effect on the present action—the attorney's fees

25  _____
    [3] Without making any decision on the matter, the Court notes that it is odd for Umpqua to attempt
26  to use a statute intended to make unilateral fee shifting provisions reciprocal, see Brown Bark III,
    219 Cal. App. 4th at 820 ("[Section 1717's] only effect is to make an otherwise unilateral right to attorney
27  fees reciprocally binding upon all parties to actions to enforce the contract." (alteration in original) (citation
    omitted)), to expand its ability to collect attorney's fees.  Section 1717 was intended, as applied here, to
28  benefit Plaintiffs, not Umpqua.

1   provision does not apply to the entirety of the contract because it is not a fee-shifting

2   provision for breach of contract actions.  Umpqua's motion is DENIED.

3               **3.      Cornerstone Community Bank**

4               Cornerstone, too, contends it is entitled to attorney's fees based on a contract.

5   The Court entered summary judgment in favor of Cornerstone based on a release

6   signed between Cornerstone and the Tribe.  See Mem. & Order, ECF No. 358.  That

7   release contains the following clause:  "If any party to this Agreement brings any action

8   to enforce or interpret the terms of this Agreement, the prevailing party in such dispute

9   shall be entitled to its reasonable attorneys' fees and costs of suit."  Decl. of Jeffrey

10  Finck, ECF No. 384-2, Ex. A, at 5.  Though the release was dispositive of the claims

11  against Cornerstone, Plaintiffs contend that the attorney's fee clause does not apply

12  because they did not "bring[] an action to enforce or interpret . . . the Agreement"—the

13  contract was instead raised as an affirmative defense.  See Pls.' Opp'n to Cornerstone's

14  Mot., ECF No. 418, at 3–6.

15              California courts are split over the import of this distinction.  In Exxess

16  Electronixx v. Heger Realty Corp., 64 Cal. App. 4th 698 (1998), the court analyzed a

17  similar provision and found attorney's fees unavailable because "[u]nder any reasonable

18  interpretation of the attorneys' fee provision, we cannot equate raising a 'defense' with

19  bringing an 'action' or 'proceeding,'" id. at 712.  In Gil v. Mansano, 121 Cal. App. 4th 739

20  (2004), the court reached a similar conclusion, distinguishing attorney's fee provisions

21  that applied to "any dispute under the agreement," id. at 743–45.  However, that case

22  included a dissent, which argued that the word "'action' includes both an answer and an

23  affirmative defense."  Id. at 747 (Armstrong, J., dissenting).

24  ///

25  ///

26  ///

27  ///

28  ///

                                        7

1    In Mountain Air Enterprises, LLC v. Sundowner Towers, LLC, 231 Cal. App. 4th

2    805 (2014), cert. granted, 185 Cal. Rptr. 3d 6 (2015),[4] the court found the Gil dissent

3    more persuasive and granted attorney's fees when a contract was raised as an

4    affirmative defense:

5          We agree with Justice Armstrong that "[r]aising . . . an
           affirmative defense is legally the same as bringing an 'action'"
6          and that parties who actually intended to adopt a fees clause
           that would allow a prevailing party to obtain fees only if the
7          party were a plaintiff and not if the party were a defendant
           would have gone to greater lengths to document it.
8

9    Id. at 853 (alterations in original) (quoting Gil, 121 Cal. App. 4th at 747 (Armstrong, J.,

10   dissenting)).  The court also noted that Gil and Exxess's reasoning "would lead to absurd

11   results" because different outcomes would result from merely the procedural posture of a

12   case.  Id.  Other courts have come to similar conclusions.  See, e.g., In re Villas, Case

13   No. CV 12-7282-JFW, 2017 WL 57767, at *4 (C.D. Cal. Jan. 4, 2017); State

14   Compensation Ins. Fund v. Khan, Case No. SACV 12-01072-CJC(JCG), 2016 WL

15   6440138, at *4 (C.D. Cal. Jan. 4, 2016).

16   This Court agrees that Mountain Air and the Gil dissent are more persuasive.

17   Making the outcome turn simply on who filed suit is illogically putting form above

18   substance.  Plaintiffs signed a contract that included an attorney's fee provision, and

19   they are subject to that provision when they bring suit based on the liability released in

20   that contract.

21   Plaintiffs also argue that sovereign immunity bars Cornerstone from recovering

22   attorney's fees from them.  See Pls.' Opp'n to Cornerstone's Mot., at 8–9.  In support,

23   they rely mainly on the "strong presumption against waiver of tribal sovereign immunity,"

24   ―――――――――
         [4] Plaintiffs claim that California Rule of Court 8.1115(e) renders Mountain Air without ""binding or
25   precedential effect, and . . . not even citable," since the California Supreme Court has granted review of
     the case.  Pls.' Opp'n to Cornerstone's Mot., at 5.  Without resolving the effect of that rule on this Court,
26   the Court notes that the cited rule states such cases "may be cited for potentially persuasive value."
     Cal. Rule of Court 8.1115(e)(1).  The Court finds Mountain Air persuasive in anticipating how the California
27   Supreme Court will resolve the contract issue now before the Court.  See Air-Sea Forwarders, Inc. v. Air
     Asia Co., 880 F.2d 176, 186 (9th Cir. 1989) ("[T]he task of the federal courts is to predict how the state
28   high court would resolve [issues of state law].").

1   Demontiney v. United States ex rel. Dep't of Interior, Bureau of Indian Affairs, 255 F.3d

2   801, 811 (9th Cir. 2001), and that waivers of sovereign immunity "be strictly construed,"

3   United States v. Nordic Village Inc., 503 U.S. 30, 42 (1992).

4         However, the contract provides an explicit waiver of Plaintiffs' sovereign immunity:

5   "The Band and the Tribal Entities expressly and irrevocably waive their sovereign

6   immunity, if any, from suit or other action by the Bank Parties for the purpose of the

7   exercise or enforcement of the Bank Parties' rights and remedies under this

8   Agreement . . . ." Decl. of Jeffrey Finck, Ex. A, at 5. Additionally, Plaintiffs agreed to

9   submit to the jurisdiction of both this Court and the Superior Court of California. Id. This

10  is a clear waiver of sovereign immunity. Furthermore, as described above, the contract

11  at issue provides the prevailing party the right to "reasonable attorneys' fees and costs of

12  suit" associated with actions to enforce or interpret the contract. Id. Because Plaintiffs

13  have waived sovereign immunity to allow Cornerstone to exercise or enforce its rights

14  under the contract, Plaintiffs have also waived that immunity for purposes of attorney's

15  fees. Cf. Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc., 86 F.3d

16  656, 660 (7th Cir. 1996) (finding a waiver of sovereign immunity where "[n]o one reading

17  th[e] clause [at issue] could doubt that the effect was to make the tribe suable").

18        Finally, Plaintiffs contend that the fees Cornerstone seeks to collect are

19  unreasonable because (1) they are significantly higher than those sought by their co-

20  defendants; (2) Cornerstone's use of two firms led to redundant efforts; and (3) the hours

21  billed are excessive. See Pls.' Opp'n to Cornerstone's Mot., at 16–17. Plaintiffs'

22  arguments are not persuasive.

23        First, Plaintiffs claim that "the only significant difference between the work

24  conducted by Cornerstone's counsel and the work conducted by APC is that

25  Cornerstone's counsel conservatively spent almost 200 hours[] engaging in an wholly

26  unnecessary discovery dispute." Id. at 17. This is not so. The claims against APC and

27  Cornerstone were substantively different, so a direct comparison is of little value. The

28  claims against APC centered on its work in setting up the Tribal Retirement Plans, while

1    the claims against Cornerstone centered on the Employee Defendants' use of Plaintiffs'

2    bank accounts at Cornerstone.  Additionally, the ultimate dispositions of the claims

3    against APC and of those against Cornerstone were procedurally different.  The claims

4    against APC were resolved via three motions to dismiss.  Cornerstone, on the other

5    hand, filed two motions to dismiss, an answer, a motion for judgment on the pleadings,

6    and ultimately resolved the claims against it on a motion for summary judgment.  Finally,

7    Plaintiffs' criticism of Cornerstone's conduct is unfounded.  That Cornerstone eventually

8    acquiesced to Plaintiffs' discovery requests does not render their opposition to those

9    requests unreasonable.  And indeed, discovery provides another point of divergence

10   between APC and Cornerstone; Cornerstone produced 441,575 pages of discovery in

11   response to Plaintiffs' discovery requests, compared to 4,823 pages from APC.

12          Second, Plaintiffs have not shown that the use of two firms was unreasonable.

13   See Gates v. Deukmejian, 987 F.2d 1392, 1397–98 (9th Cir. 1992) ("The party opposing

14   the fee application has a burden of rebuttal that requires submission of evidence to the

15   district court challenging the accuracy and reasonableness of the hours charged or the

16   facts asserted by the prevailing party in its submitted affidavits.").  That two firms worked

17   on the same matter does not necessarily indicate that the two firms billed "for the same

18   work" as Plaintiffs contend.  Pls.' Opp'n to Cornerstone's Mot., at 18.  The only evidence

19   Plaintiffs cite in support of their claim of "numerous instances of redundant efforts" is the

20   conclusory declaration of Plaintiffs' counsel.  Id. at 19 (citing Decl. of Rachel Rivers, ECF

21   No. 418-3, ¶¶ 9–11).  They point to no specific work that was redundant.  This is

22   insufficient to rebut the accuracy or reasonableness of the hours provided by

23   Cornerstone.

24          Third and finally, Plaintiffs have not shown that the hours sought are excessive.

25   Their charges of excess largely repeat the same arguments underpinning their claim that

26   use of two firms was unreasonable and duplicative.  Additionally, though, Plaintiffs argue

27   that "successive motions to dismiss and then a motion for judgment on the

28   pleading[s] . . . were necessitated by a mistake" and therefore the hours billed for those

1   motions were unnecessary.  Pls.' Opp'n to Cornerstone's Mot., at 19.  Aside from the

2   fact that Plaintiffs essentially argue that Cornerstone should have more easily and more

3   quickly disposed of Plaintiffs' claims against them, Plaintiffs provide no support for their

4   apparent contention that attorney's fees are only available for time spent on successful

5   motions.  Instead, Plaintiffs cite two cases that address different situations.

6          In Carson v. Billings Police Department, 470 F.3d 889 (9th Cir. 2006), the court

7   held that the district court's explanation for disallowing 21.5 hours was "sufficient, and

8   sufficiently explained":  "The time was spent on a motion to enforce the administrative

9   decision before the defendants' time to seek judicial review had elapsed, and plaintiff

10  filed in in the wrong venue."  Id. at 893.  Plaintiffs have identified no comparable error on

11  the part of Cornerstone.  In Sorenson v. Mink, 239 F.3d 1140 (9th Cir. 2001), the court

12  stated that a district court may "in its discretion" reduce an attorney's fee award based on

13  the "limited success" achieved by the prevailing party, id. at 1147.  It also described the

14  two-step process for determining when such discretion should be used, the first step

15  being a determination of whether the party was unsuccessful "on claims that were

16  unrelated to the claims on which [it] succeeded."  Id. (quoting Hensley v. Eckerhart,

17  461 U.S. 424, 434 (1983)).  In the instant case, Cornerstone prevailed on all claims

18  against it, so the "limited success" principle is inapplicable.

19         Because the contract between Plaintiffs and Cornerstone that formed the basis of

20  Cornerstone's summary judgment motion provides attorney's fees to the prevailing party,

21  Cornerstone's motion is GRANTED.[5]  Furthermore, Plaintiffs have not established that

22  ///

23  ///

24  ///

25           [5] Plaintiffs also filed an Ex Parte Motion for Leave to File a Declaration in Response to
    Cornerstone's Reply.  ECF No. 422.  That declaration sets out facts concerning the circumstances of when
26  Plaintiffs' counsel learned of the contract that formed the basis of Cornerstone's motion for summary
    judgment and whether Plaintiffs ever made a claim based on that contract.  Because the Court's analysis
27  of the contract does not depend on whether Plaintiffs ever stated a cause of action under it, the ex parte
    motion is DENIED as moot.

28

1  any reduction of the fees Cornerstone incurred is warranted and Cornerstone is

2  accordingly entitled to the full $1,049,559.16 it seeks.[6]

3        **B.      Bills of Cost**

4        Plaintiffs object to certain items in Moore's, APC's, Cornerstone's, and Umpqua's

5  bills of costs.  The Court addresses each in turn.

6        First, Plaintiffs object to Moore including video transcript and optical character

7  recognition ("OCR") costs.  Pls.'s Consolidated Objs., at 3–4.  Plaintiffs' video transcript

8  objection is based on a misreading of Moore's bill of costs:  "The 'VID' designation on

9  the . . . invoice denotes [the] presence of a videographer at the deposition," not that the

10  transcript was a video transcript.  Decl. of Kristin N. Blake, ECF No. 404-1, ¶ 4.  The

11  OCR costs are also taxable because the electronically stored information ("ESI")

12  agreement between the parties specifically required OCR to be performed on such

13  discovery and Moore incurred these OCR costs only because Moore received discovery

14  that did not conform to this agreement.  Id. ¶ 6.  Accordingly, they are recoverable.  See

15  Ancora Techs., Inc. v. Apple, Inc., Case No. 11-CV-06357 YGR, 2013 WL 4532927, at

16  *2 (N.D. Cal. Aug. 26, 2013) (finding OCR costs taxable where they resulted from a

17  failure to comply with the ESI agreement).  Plaintiffs' objections to Moore's bill of costs

18  are OVERRULED.

19        Second, Plaintiffs object to APC obtaining copies of the depositions of Shirley

20  Schrumpf and Sylvia Lopez, as well as costs associated with the production of

21  e-discovery.  Pls.'s Consolidated Objs., at 4–5.  As for the depositions, Plaintiffs again

22  misread the bill of costs—APC did not obtain video transcripts of the depositions, but

23  rather written transcripts.  Decl. of William A. Muñoz, ECF No. 408, ¶ 2.  It also is of no

24  _____

25  [6] The Court notes that Plaintiffs also object to costs incurred by Cornerstone, but these objections are accompanied only by conclusory, unsupported statements.  Plaintiffs provide no support for their

26  contention that computerized legal research costs are unrecoverable as overhead expenses.  Similarly, Plaintiffs' objection to data hosting charges related to e-discovery is based solely on the contention that

27  "none of Cornerstone's [co-]defendants incurred a similar charge."  Pls.' Opp'n to Cornerstone's Mot., at 20.  The Court fails to see how that supports Plaintiffs' objection, especially given the significantly greater

28  amount of discovery Cornerstone produced.

1   matter that Schrumpf and Lopez "were deposed in relation to Umpqua."  Pls.'s

2   Consolidated Objs., at 4.  It is not unreasonable for APC to obtain those transcripts to

3   determine what relevance, if any, they had to the claims against it.  Plaintiffs' e-discovery

4   objection claims that the costs of hiring an accounting firm are non-taxable, arguing that

5   the firm's contribution was "intellectual effort."  Id.  However, the accounting firm only

6   "oversaw the process of converting . . . data" for purposes of producing discovery.  Decl.

7   of William A. Muñoz, ECF No. 408, ¶ 3.  Such costs are taxable.  See Jardin v.

8   Datallegro, Inc., No. 08-CV-1426-IEG (WVG), 2011 WL 4835742, at *7 (S.D. Cal. 2011)

9   (holding the costs of converting data to the proper format taxable).  Plaintiffs' objections

10  to APC's bill of costs are OVERRULED.

11      Plaintiffs object to Cornerstone's bill of costs on the basis that it includes $360.45

12  copies made only "for counsel's convenience."  Pls.'s Consolidated Objs., at 6; see also

13  U.S. Ethernet Innovations, LLC v. Acer, Inc., 2015 WL 5187505, at *5 (N.D. Cal. Sept. 4,

14  2015) ("[C]opies made solely for counsel's convenience or the litigant's own use are not

15  recoverable because they are not 'necessarily' obtained for use in the case.").  Plaintiffs'

16  argument, however is based on 28 U.S.C. § 1920(4)—which only covers the costs of

17  copies "necessarily obtained"—not on the contract discussed above that forms the basis

18  of Cornerstone's award of attorney's fees.  That contract also entitles Cornerstone to "its

19  reasonable . . . costs of suit."  Decl. of Jeffrey Finck, ECF No. 384-2, Ex. A, at 5.  This

20  language is broader than § 1940(4)'s "necessarily obtained" language.  Plaintiffs'

21  objection to Cornerstone's bill of costs is OVERRULED.[7]

22      Finally, Plaintiffs object to Umpqua's bill of costs for including a video transcript,

23  as well as the fee paid by Defendants' counsel, Kasey J. Curtis, for admission to the

24  U.S. District Court for the Eastern District of California.  Pls.'s Consolidated Objs., at 6–

25  7.  Once again, Plaintiffs have misread the bill of costs—like its co-defendants, Umpqua

26  did not obtain a video transcript of the depositions in question.  See Umpqua's Resp. to

27          [7] The Court notes that it appears as though the disputed $360.45 is included in the $1,049,559.16
    attorney's fee award.  See Decl. of Kyle M. Fisher, ECF No. 384-4, Ex. 6, at 272 (setting out $360.45 for
28  "Photocopies January 2017").  Of course, Cornerstone can recover the $360.45 only once.

1   Objs., ECF No. 406, at 3.  Plaintiffs are also incorrect in stating that the Ninth Circuit has

2   not ruled on whether permanent admission fees are taxable; the Ninth Circuit has ruled

3   that they are.  See Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc., 741 F.3d 955, 958

4   (9th Cir. 2013) (stating that fees for "permanent admission of attorneys to the district

5   court's bar" are taxable).  Plaintiff's objections to Umpqua's bill of costs are

6   OVERRULED.

7

8                                      **CONCLUSION**

9

10          As set out above, APC's and Umpqua's Motions for Attorney's Fees, ECF

11  Nos. 382, 388, are DENIED and Cornerstone's Motion for Attorney's Fees, ECF No. 384,

12  is GRANTED.  Cornerstone is entitled to $1,049,559.16 in attorney's fees and costs.

13  Furthermore, Plaintiffs' Objections to Bills of Costs Submitted, ECF No. 404, are

14  OVERRULED and APC, Umpqua, Cornerstone, and Moore are entitled to the full

15  amount provided in their bills of costs, ECF Nos. 383, 385, 386, and 387.

16          IT IS SO ORDERED.

17  Dated:  July 26, 2017

18

19                                      MORRISON C. ENGLAND, JR.
                                        UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28