UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASKENTA BAND OF NOMLAKI INDIANS; and PASKENTA ENTERPRISES CORPORATION,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>INES CROSBY; et al.,<br><br>　　　　Defendants. | No. 2:15-cv-00538-MCE-CMK<br><br>**ORDER GRANTING MOTION TO STAY ENFORCEMENT OF ORDER ON ATTORNEYS' FEES AND COSTS PENDING APPEAL** |

Plaintiffs Paskenta Band of Nomlaki Indians and Paskenta Enterprises Corporation "move for an order staying the enforcement of the Court's [July 27, 2017,] Order[, ECF No. 433,] under Federal Rule of Civil Procedure ("FRCP") 62(d) pending disposition of Plaintiffs' appeals." Pls.' Mot. Stay Enforcement Order Attys' Fees Costs Pending Appeal ("Mot.") 1:7-9, ECF No. 441. "Plaintiffs further ask that the Court use its discretion to issue this requested order absent the posting of a supersedeas bond . . . ." Id. at 1:9-10. "In the alternative, Plaintiffs request that the stay of enforcement be granted conditioned not upon a supersedeas bond, but instead upon Plaintiffs' provision of a form of alternative security . . . in lieu of bond." Id. at 1:18-20. Under that arrangement, Plaintiffs suggest that the Court issue an order that:

///

1

> Requires, until entry of a further order by the Court following disposition of the appeal relevant to the particular defendant, that the Tribe maintain cash and marketable securities worth at least 125% of the attorneys' fees and/or costs awarded to the defendant in a specified investment account;
>
> Prohibits, during that period, the Tribe from liquidating, transferring, or otherwise taking actions that would result in the balance of the account falling below a value worth 125% of the attorneys' fees and/or costs awarded to the defendant; and
>
> Requires, during that period pending disposition of the appeal relevant to the particular defendant, that the Tribe provide defendant quarterly sworn confirmation that cash and marketable securities worth at least 125% of the attorneys' fees and/or costs awarded to defendant remain in the account.

Id. at 13:26-14:7.

Defendants Umpqua Bank and Umpqua Holdings Corporation filed a response in which they apprise the Court that while they disagree with the "legal propriety of Plaintiffs' request," they do not formally oppose the motion because of the cost of doing so. Def.'s Umpqua Bank & Umpqua Holdings Corp.'s Resp. 1, ECF No. 444. Defendants Cornerstone Community Bank, Cornerstone Community Bancorp, and Jeffrey Finck (together, "Cornerstone Defendants") file a substantive opposition opposing both a bondless stay and a stay conditioned upon the alternative security. See generally Cornerstone Defendants' Opp. ("Cornerstone Opp."), ECF No. 445. As set forth below, Plaintiffs' Motion will be granted.[1]

FRCP 62(d) reads, in pertinent part: "If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond." Fed. R. Civ. P. 62(d). FRCP 62(d)'s bond requirement "speaks only to stays granted as a matter of right, it does not speak to stays granted by the court in accordance with its discretion." Fed. Prescription Serv., Inc. v.

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

Am. Pharm. Ass'n, 636 F.2d 755, 759 (D.C. Cir. 1980).  "District courts have inherent discretionary authority in setting supersedeas bonds," Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1505 n. 1 (9th Cir. 1987), and "the court has discretion to allow other forms of judgment guarantee," Int'l Telemeter Corp. v. Hamlin Int'l Corp., 754 F.2d 1492, 1495 (9th Cir. 1985), or even, under "unusual circumstances," to order "unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery," Am. Pharm. Ass'n, 636 F.2d at 760-61.

To demonstrate that a supersedeas bond is unnecessary to protect the judgment creditors, Plaintiffs engage extensively with a multi-factor test from Dillon v. Chicago, 866 F.2d 902, 904-05 (7th Cir. 1988).  Mot. at 6:23-11:22.  The Ninth Circuit has never formally adopted these factors, and has not offered its own guidance, but Dillon is often cited within this jurisdiction and has been utilized on three occasions in the Eastern District of California.  See C.B. v. Sonora Sch. Dist., 819 F. Supp. 2d 1032 (E.D. Cal. 2011), rev'd and vacated sub nom on other grounds, C.B. v. City of Sonora, 730 F.3d 816 (9th Cir. 2013), aff'd in part, rev'd in part on reh'g en banc on other grounds, 769 F.3d 1005 (9th Cir. 2014); Yenidunya Investments, Ltd. v. Magnum Seeds, Inc., No. CIV. 2:11-1787 WBS, 2012 WL 1085535 (E.D. Cal. Mar. 30, 2012); United States v. Simmons, No. CV F 96-5948 AWI DLB, 2002 WL 1477460 (E.D. Cal. May 14, 2002).

The Dillon factors are:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

866 F.2d at 904–05 (internal citations and quotation marks omitted).  Plaintiffs analyze only the first four factors, as the fifth is inapplicable.  In short, they argue and introduce declarations to the affect that: (1) they are a local entity with significant capital and collection will be simple, see Mot. at 7:22-9:2.; (2) any judgment could be paid in five

3

business days, see id. at 9:3-15; (3) In 2015, the Tribe had a net position 92.98 times the judgment amount, and their net position has only increased since then, see id. at 9:16-10:21; (4) for this reason, especially given vast sums of liquid assets available quickly, Plaintiffs' ability to pay is plain and a bond would be a waste of money, see id. at 11:1-14.

The Cornerstone Defendants argue that Plaintiffs have failed to meet the first two Dillon factors because the "Plaintiffs provide no evidence of the collection process." Cornerstone Opp. 5:23. But plaintiffs rightly distinguish Dillon on this point:

> In Dillon, the particular mode of payment of the judgment and that guarantee were germane because the judgment was against an entire city, a city that had a "desultory record in payment of sizable tort judgments." [] 866 F.2d at 905. It was for that reason that the court sought additional assurances regarding the precise source of funds available for payment and the precise process for collection. Here, by contrast, the judgment at issue is for a cash payment against the Tribe, with easily identifiable (and, in fact, identified) large fixed and liquid assets . . . .

Pls.' Reply Supp. Mot. ("Pls.' Reply") 5:8-17, ECF No. 446.

Next, the Cornerstone Defendants argue that the third Dillon factor has not been met because, while funds may be available, Plaintiffs have not shown a willingness to pay. Cornerstone Opp. 6:15-7:3. In Plaintiffs' Reply, however, Plaintiffs both explain why they believe no promise is needed, Pls.' Reply 6:4-24, and expressly promise to make payment. See Corrected Decl. Andrew Alejandre ¶ 3, ECF No. 446-1 (". . . [T]he Tribe will make prompt payment of any fees and costs and interest that the court determines to be owed by the Tribe to any Defendant following disposition of any related appeal.").

On the fourth Dillon factor, the Cornerstone Defendants argue that while Plaintiffs have made a showing of their current financial condition, they have not made a showing that they will be able to maintain solvency through appeal. Cornerstone Opp. 7:4-21. As Plaintiffs correctly counter in their Reply:

///

> The Tribe has not only presented detailed evidence of its very strong financial position as of December 31, 2015 and December 31, 2016, with a large amount of assets and limited liabilities, see Motion Background §1; Mercier Dec. ¶¶ 2-6, the Tribe additionally provided evidence of: (i) a strong upward trend of the Tribe's financial position year-over-year; (ii) the strong financial position of its successful Casino business; (iii) the strong positive trend of that Casino business in both revenue and net position year-over-year; and (iv) three Tribal investment funds containing cash and liquid securities totaling in excess of $26 million. See id.

Pls.' Reply 3:17-23.

In responding to Plaintiffs alternative proposal in lieu of supersedeas bond, the Cornerstone Defendants marshal arguments that are similar to those made against complete waiver of the bond. There are, however, two additional arguments: First, the alternative arrangement is not a true security, Cornerstone Opp. 8:13-9:2; and, second, the arrangement would unduly burden the Court and the Cornerstone Defendants by making them monitor an injunction, id. at 9:26-10:2.

It is true that the Plaintiffs' proposed alternative arrangement is not a true security instrument pledged to the judgment creditors. But if the Court has discretion to stay a money judgment pending appeal absent any supersedeas bond, it logically entails the ability to approve an alternative arrangement that offers more security than a complete waiver but less than a bond.

Although there is more complexity in managing the alternative arrangement Plaintiffs propose than would be involved if the Court ordered a supersedeas bond or no bond at all, the additional burden is not great, and it is outweighed by the added assurance it represents for the judgment creditors.

Plaintiffs have demonstrated that a traditional supersedeas bond is not needed to protect the judgment creditors, but the alternative arrangement Plaintiffs propose strikes a better balance between securing for the judgment creditors what they are due, on the one hand, and protecting the Plaintiffs from needless financial loss, on the other, than would be struck by a stay absent any security.

///

For the reasons above, the Plaintiffs' Motion to Stay Enforcement of Order on Attorneys' Fees and Costs Pending Appeal, ECF No. 441, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Within thirty (30) days after this Order is electronically filed, the Paskenta Band of Nomlaki Indians shall begin maintaining cash and marketable securities worth at least 125% of the attorneys' fees and/or costs awarded to the Defendants in a specified investment account and shall, no later than ten days thereafter, provide the Court written confirmation, under penalty of perjury, of compliance.

2. The Paskenta Band of Nomlaki Indians shall maintain the above-described investment account until entry of further order by the Court following disposition of the appeal relevant to a particular Defendant, and during that time the Paskenta Band of Nomlaki Indians shall not liquidate, transfer, or otherwise take actions that would result in the balance of the account falling below a value worth 125% of the attorneys' fees and/or costs awarded; and

3. Until entry of further order, the Paskenta Band of Nomlaki Indians shall provide the relevant Defendants quarterly sworn confirmation that cash and marketable securities worth at least 125% of the attorneys' fees and/or costs awarded remain in the account.

IT IS SO ORDERED.

Dated: October 18, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE